# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

|  |  |
|---|---|
| SHANNON ARBUTHNOT, individually and on behalf of all others similarly situated, | Case No. 6:22-cv-658-PGB-DCI |
| *Plaintiff,* v. | JURY DEMAND |
| ACUITY – CHS, LLC f/k/a COMPREHENSIVE HEALTH SERVICES LLC, | |
| *Defendant.* | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

Plaintiff files this Response in Opposition to Defendant Acuity – CHS, LLC's ("CHS" or "Defendant") Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. 21), and states as follows:

## I. INTRODUCTION

This case arises out of an entirely foreseeable—and wholly preventable—data breach that compromised the personal, confidential, and highly sensitive information of over 106,000 people, including that of the Plaintiff. Compl. ¶¶ 66, 93. As a result of Defendant's myriad data security deficiencies, and complete failure to protect Plaintiff's private information, cybercriminals gained unfettered access to Defendant's computer network. Id. ¶¶ 45-50. For over seven months—from April 9, 2020 to

1

October 22, 2020—cybercriminals were inside of Defendant's network, with Defendant not only failing to stop these criminals from accessing confidential files belonging to thousands of people, but Defendant not even being aware that its systems had been breached. *Id.* ¶ 36. Even worse, when Defendant did finally become aware of suspicious activity with its network on September 30, 2020, the criminal activity continued for another 22 days, until October 22, 2020. *Id.* Defendant then compounded the problem by waiting a shocking 16.5 months to send out notices of the data breach. *Id.* ¶ 38.

These are damning facts. What's striking about these facts is that they are not even in dispute. These facts were reported by Defendant to various State's Attorney Generals. Compl. ¶ 36. Also, the date that the intrusion was discovered was included in the notice letters issued by Defendant in February 2022. *Id.* at ¶ 28.

Defendant's Notice of Data Breach letters go on to state the information accessed by the cybercriminal included names and Social Security numbers. *Id.* at ¶ 11. This is all the information needed for cybercriminals to commit myriad crimes, which they did. As Plaintiff alleges, she has already been subjected to various forms of actual misuse of her data, including fraudulent attempts to have a promotional check issued to a third-party in Plaintiff's name, fraudulent credit inquires, and increased scam phone calls, texts, and emails traceable (via Google searches) back to CHS. *Id.* at ¶¶ 75-76. Plaintiff sustained actual injury from the present and continuing risk of

harm occasioned by the theft of her Social Security number, the gold standard for identity theft.[1] *Id*. at ¶ 88

Defendant's motion seeks dismissal for alleged lack of standing and for an alleged failure to state Plaintiff's legal claims. Both of these arguments fail. Plaintiff alleges actual misuse and damages (in the form of time spent mitigating the effects of the Data Breach and misuse). At the pleadings stage, this alone is sufficient to establish Article III standing. Also, Defendant's traceability arguments have been soundly rejected by other courts, including in the recent decision in *In Re: Blackbaud, Inc. Customer Data Breach Litigation,* No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *8 (D.S.C. July 1, 2021), where the court stated that defendant's "factual challenge to the traceability requirement of Article III standing involves facts that are intertwined with the merits of Plaintiffs' claims," and declined to consider defendant's factual attack at the pleadings stage.

Defendant's Rule 12(b)(6) arguments fail as well. As recently as January 2022, a court in this District rejected a similar challenge to a negligence claim in *Farmer v. Humana, Inc.*, No. 8:21-CV-1478-MSS-SPF, 2022 WL 732126, at *5 (M.D. Fla. Jan. 25, 2022). And courts have routinely rejected similar challenges to the negligence *per se* claim and unjust enrichment claim. Plaintiff's claims in this case are properly pled, and Defendant's motion fails.

---

[1] This breach involved the theft of Social Security numbers, the "gold standard for identity theft." *Portier v. NEO Tech. Sols.*, 2019 WL 7946103, at *12 (D. Mass. Dec. 31, 2019).

## FACTUAL BACKGROUND

The facts of this case are laid out in the Complaint, and Plaintiff will not restate them all here. On or about February 15, 2022, Plaintiff received a "Notice of Data Security Incident" letter dated February 15, 2022. Compl. ¶ 9. The letter notified Plaintiff that on some unidentified date, CHS detected suspicious activity on its computer network. *Id*. ¶ 10. After an investigation, CHS determined that Plaintiff's information was compromised in the Data Breach by the unauthorized access. The files subject to unauthorized access contained Plaintiff's name and Social Security number. *Id*. ¶ 11. The letter further advised Plaintiff that she should spend time mitigating her losses by taking steps to help safeguard her information, including signing up for 24-months of single-bureau credit and identity monitoring through Equifax. *Id*. ¶ 12.

Defendant obtained and continues to maintain possession of Plaintiff's and Class Members' PII. *Id*. ¶ 13. Plaintiff would not have entrusted her PII to Defendant had she known that it would fail to maintain adequate data security. Plaintiff's PII was compromised and disclosed as a result of the Data Breach. *Id.* Plaintiff suffered actual misuse of her compromised data, including an attempt to fraudulently apply for a promotional check from Dish Network, numerous fraudulent credit inquiries, and increased spam phone calls, texts, and emails. *Id.* ¶¶ 75-76.

As set out above, this breach began in April 2020, and continued unabated until late October 2020. *Id*. ¶ 36. Defendant then waited until February 2022 to issue notice

4

of this data breach. *Id*. ¶ 9. Defendant now advances the conclusory and indeed false contention that essentially "nothing happened" to Plaintiff and Class Members during that 16.5-month gap. This is a self-serving argument, as it is certainly possible (given the nature of the information stolen) that a lot happened, but no one would ever know to attribute it to this Data Breach. In essence, by delaying notice for 16.5 months, Defendant purposefully muddied the traceability waters, and impeded Class Members' ability to "connect the dots" – that the fraud and identity theft that they likely suffered from April 2020 to February 2022 was as a result of this Data Breach. Moreover, it is axiomatic that Plaintiff's and Class Members' information was taken by the cybercriminals to engage in identity theft or to sell the information to other cyber criminals to facilitate identity theft.

With regard to Defendant's statement of "facts," it is plain that the so-called "facts" set forth by Defendant are nothing more than unsupported argument challenging the traceability of the actual misuse and injuries that Plaintiff alleges. Even if this Court were to entertain this argument, the traceability arguments are not ones that a court can decide on a motion to dismiss, because they are intertwined with the merits of this case. *See In re Blackbaud*, 2021 WL 2718439, at *8.

Also, Defendant makes the contention that because the cyber-criminals who breached Defendant's system and who had unfettered access for over 7 months were attempting to initiate fraudulent wire transfers, that must mean that these same cyber-thieves were not trying to steal confidential data. Def.'s Mot. at 13. This is illogical, as

there is no binary choice between the purpose of this attack being A) to initiate wire transfers or B) to steal confidential data.  It can be, and is, both.[2]

The facts plead here – most notably the actual misuse plead by Plaintiff – defeats Defendant's arguments.  The Court should deny this motion in its entirety.

## II.   Plaintiff Has Standing to Bring Her Claims

Defendant's first argument is a familiar one in data breach cases – an allegation that Plaintiff lacks standing. *See In re: 21st Century Oncology Customer Data Security Breach Litigation*, 380 F. Supp. 3d 1243, 1250-58 (standing challenges are routine in data breach cases, analyzing the multitude of opinions from various courts regarding standing in data breach cases). This argument fails where Plaintiff alleges actual misuse of the compromised data.

To establish standing under Article III, Plaintiff must "'show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it.'" *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), and *cert. denied sub nom. Watkins v. Spector*, 142 S. Ct. 765 (2022) (hereinafter *In re Equifax*) (quoting *Muransky v. Godiva Chocolatier, Inc.*, 979 F. 3d 917,924 (11th Cir. 2020). Specifically,

---

[2] Defendant's incomplete and misleading citation to and reliance upon *In re Practicefirst Data Breach Litig.*, No. 121CV00790JLS/MJR, 2022 WL 354544 (W.D.N.Y. Feb. 2, 2022) demonstrates the infirmity of its arguments. *PracticeFirst* is a magistrate judge's report and recommendation that has not been adopted by the district court judge to date, and is the subject of a substantial objection. *See In re PracticeFirst*, 121CV00790JLS/MJR, ECF 35. Accordingly, this non-final decision from another jurisdiction has no precedential value, and yet Defendant cites it for a score of propositions that are simply incorrect, including the *PracticeFirst* court's erroneous factual holding that the ransomware attack in that case had a single purpose.

the "'irreducible constitutional minimum' of standing contains three requirements":
(1) plaintiff suffered an "injury in fact" that is concrete and particularized, (2) the injury
is "fairly traceable" to the defendants' challenged conduct, and (3) the injury is likely
to be redressed by a favorable decision. *Id.* at 1261 (quoting *Lujan v. Defs. of Wildlife*,
504 U.S. 555, 560–61 (1992)). Here, Defendant challenges whether Plaintiff has
sufficiently alleged the first two factors. She has, and therefore CHS's argument fails.

### A.   Plaintiff Suffered Injury-in-Fact.

To establish the injury-in-fact element of the Article III standing inquiry, "a
plaintiff must show that he or she suffered 'an invasion of a legally protected interest'
that is 'concrete and particularized' and 'actual or imminent, not conjectural or
hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (quoting *Lujan*, 504
U.S. at 560). An injury is particularized if it "affect[s] the plaintiff in a personal and
individual way." *Id.* at 1548 (citations omitted). An injury is concrete when it is "real,"
not "abstract." *Id.* Importantly, intangible injuries like the threat of future injury may
be concrete. *Id.* at 1549. "An allegation of future injury may suffice if the threatened
injury is 'certainly impending,' or there is a "'substantial risk" that the harm will
occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v.
Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). The injury need not be substantial:
"a small injury, an identifiable trifle, is sufficient to confer standing." *Common
Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009).

### i.   Plaintiff alleges injury in fact from actual misuse and time spent mitigating the misuse.

In its motion, Defendant contends multiple times that Plaintiff does not allege any actual misuse of her stolen PII. The plain language of the Complaint states otherwise. She alleges attempted financial fraud via the request for a Dish Network promotional check in her name, and multiple fraudulent credit inquiries. Compl. ¶ 75. She also alleges experiencing a marked increase in spam calls, emails, and texts after this Data Breach, including a call that she tied to "CHS" via a Google search *Id.* ¶ 76. "These allegations satisfy the prong of misuse of the improperly obtained data." *In re GE/CBPS Data Breach Litig.*, 2021 WL 3406374, at *6 (S.D.N.Y. Aug. 4, 2021) (finding prong satisfied where plaintiff alleged "that he has received phishing and scam emails to his personal email address and phishing and scam phone calls to his personal phone number"). An increase in scam phone calls as a result of private data being compromised was recently found to be a sufficient allegation of injury at the pleading stage by the U.S. District Court for the District of New Mexico. *Charlie v. Rehoboth McKinley Christian Health Care Servs.*, CV 21-652 SCY/KK, 2022 WL 1078553, at *8 (D.N.M. Apr. 11, 2022). The federal circuit courts generally agree that where there is evidence of some misuse, the plaintiff has standing. *See Tsao v. Captiva MVP Restaurant Partners, LLC*, 986 F.3d 1332, 1343-44 (11th Cir. 2021) (noting that while "evidence of actual misuses is not necessary for a plaintiff to establish standing following a data breach," plaintiffs must show "specific evidence of *some* misuse of class members' data"); *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 301-02 (2d Cir. 2021) ("[C]ourts have been more likely to conclude that plaintiffs have established a

substantial risk of future injury where they can show that at least some part of the compromised dataset has been misused." (collecting cases)); *Hutton v. Nat'l Board of Examiners in Optometry, Inc.* 892 F.3d 613, 622 (4th Cir. 2018) (although "a mere compromise of personal information, without more, fails to satisfy the injury-in-fact element," the actual use or attempted use of stolen PII is a concrete injury sufficient to confer standing).

Because this actual misuse of Plaintiff's data constitutes a concrete harm, so does the Plaintiff's efforts to mitigate that harm via her lost time and lost opportunity costs. Plaintiff alleges that to protect herself from identity theft after the Data Breach, she spent and will spend considerable time monitoring her financial accounts for any fraudulent activity. Compl. ¶ 85.

As the Eleventh Circuit noted in *Tsao*, plaintiffs cannot manufacture standing by "inflicting injuries" on themselves in the form of mitigation costs. *Id.* at 1344–45. Critical to the Court's analysis was the fact that the plaintiff had not suffered any misuse or attempted misuse of his payment card information because he voluntarily cancelled his cards before any misuse could occur.  But a mere four months later, in *In re Equifax*, the Eleventh Circuit clarified when it is appropriate to incur injuries "while mitigating a risk of harm, such as purchasing a credit freeze or spending time or effort to minimize a risk of identity theft." 999 F.3d at 1262. It explained that,

> [A]ny assertion of wasted time and effort necessarily rises or falls along with this Court's determination of whether a risk of injury is a concrete harm. For that reason, when a plaintiff faces a sufficient risk of harm, the time, money, and effort spent mitigating that risk are also concrete injuries.

*Id.* (quoting *Muransky*, 979 F.3d at 931). The Court in *In re Equifax* made it clear that in cases where there is a material  risk of future identity theft, individuals can recover damages for reasonable expenses incurred in an effort to mitigate identity theft. *In re Equifax*, 999 F.3d at 1263.

*In re Equifax* "involved some of the most sensitive personal information possible: all nine digits of Americans' Social Security numbers, coupled with their names, dates of birth, and addresses, among other things." 999 F.3d at 1257. Recognizing the "unequivocal damage" that could be done using stolen Social Security numbers, names, and dates of birth, the Eleventh Circuit had "no hesitation" in concluding that the plaintiffs "adequately alleged that they face a 'material' and 'substantial' risk of identity theft that satisfies the concreteness and actual-or-imminent elements." *Id.*

The Eleventh Circuit in *Equifax* thus refutes Defendant's argument that Plaintiff's mitigation efforts do not qualify as injury-in-fact. *See* Def's Mot. at 12. Because Plaintiff has demonstrated that she suffered actual misuse of her data (and will show below a certainly impending risk of identity theft resulting from the Data Breach), and thus suffered a concrete harm, the time and effort spent mitigating that risk are a separate, concrete injury that confers standing in this case as well as cognizable damages. *See In re Equifax*, 999 F.3d at 1262; *see also Hutton*, 892 F.3d at 622 ("Because the injuries alleged by the Plaintiffs are not speculative, the costs of mitigating measures to safeguard against future identity theft support the other allegations and together readily show sufficient injury-in-fact to satisfy the first element of the standing to sue analysis."); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828

(7th Cir. 2018) (finding injury-in-fact and damages pleaded when there is fraud and subsequent time spent dealing with the fraud); *Portier v. NEO Tech. Sols.*, 2019 WL 7946103, at \*15 (D. Mass. Dec. 31, 2019), *report and recommendation adopted*, 2020 WL 877035 (D. Mass. Jan. 30, 2020) (finding that recently, many courts " have recognized that the purchase of credit monitoring services" and  "costs expended to deal with fraudulent activity following the theft of PII, when spent with the knowledge that stolen information has already been misused, can constitute cognizable injuries.").

### ii.   Plaintiff sufficiently alleged a concrete harm based on an increased risk of identity theft as a result of the Data Breach.

Plaintiff further alleges as a result of the Data Breach that she faces a present, immediate, and continuing increased risk of fraud, identity theft, and misuse of her PII, including her Social Security Number. Compl. ¶ 88. In considering whether Plaintiff has properly alleged injury-in-fact based on an increased risk of identity theft, this Court should follow the well-reasoned analysis in *In re 21st Century Oncology*, 380 F. Supp. 3d 1243. In that case, the Court was able to identify three "commonalities" in the cases finding an increased risk of identity theft sufficient to confer standing. *Id.* at 1251.[3] First was "the alleged motive of the unauthorized third-party who received access to the plaintiffs' sensitive information." *Id.* A plaintiff is more likely to establish an injury in fact based on the increased risk of identity theft where the plaintiff has

---

[3] The Second Circuit formulated a similar analysis in *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 302 (2d Cir. 2021).

alleged that the third party behind the data breach targeted the plaintiff's personal information with an intent to use the information fraudulently. *Id.* at 1252.

In data breach cases in which hackers have intentionally stolen PII, courts have found that plaintiffs face a substantial risk of a certainly impending injury because "a primary incentive for hackers is 'sooner or later[ ] to make fraudulent charges or assume those consumers' identities[.]'" *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016) (*citing Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015)). In other words, the only reason hackers steal PII is to commit identity theft and, thus, data breach victims face a real and imminent risk that they will suffer a concrete pecuniary injury. Numerous courts have therefore found that victims of "hacker" data breaches have Article III standing to seek redress from a defendant's negligence in federal court. *See, e.g.*, *Lewert*, 819 F.3d at 967; *Remijas*, 794 F.3d at 693; *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1216 (N.D. Cal. 2014); *In re Zappos.com, Inc.*, 888 F.3d 1020, 1027 (9th Cir. 2018). As the Sixth Circuit explained in *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x. 384, 389 (6th Cir. 2016): "[w]here a data breach targets [PII], a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints." *Id.*[4]

In this case, there is no doubt that the Data Breach was the result of a cyberattack in which hackers gained access to CHS's pre-2019 invoicing files for certain CHS clients and used that access to compromise and acquire Plaintiff's and the

---

[4] *See e.g., Farmer*, 2022 WL 732126, at *4 (finding standing where plaintiff alleged unauthorized persons obtained access to Social Security numbers).

Class Members' PII, including Social Security numbers. Compl. ¶¶ 30-33. Defendant's notices to Plaintiff and various state Attorneys Generals make it clear that Defendant believed Plaintiff's and Class Members' unencrypted personal information was acquired by an unauthorized person as a result of the Data Breach, as Defendant offered 24-months of credit and identity monitoring to Plaintiff and Class Members *Id.* ¶¶ 35-36. This immediate and continuing risk will not dissipate after 24 months but will continue for the lifetimes of Plaintiff and Class Members, necessitating appropriate identity protection for the same periods.  The theft of Plaintiff's and Class Members' PII gives rise to a reasonable, indeed undeniable, inference that the attacker(s) stole the information for the purpose of committing identity theft.

Second, the *21st Century Oncology* Court noted the type of information compromised in the data breach is relevant to determining whether there is a present and imminent risk of harm. Generally, easily changeable or replaceable information— such as credit card and debit card numbers—standing alone is insufficient evidence of an increased-risk injury-in-fact.[5] By contrast, courts are more likely to find such injury-in-fact when the compromised information includes the type of PII and PHI that can be used to open unauthorized accounts, such as Social Security numbers, dates of birth, and driver's license numbers. *See Tsao*, 986 F.3d at 1343 (contrasting those types

---

[5] It should be noted, however, that there are several cases in which courts, including this one, have found an increased risk of harm based on the theft of payment card information in data breaches and the use of those cards for fraudulent purposes. *See, e.g.*, *In re Brinker Data Incident Litig.*, 2019 WL 3502993, at *1 (M.D. Fla. Aug. 1, 2019); *Torres v. Wendy's Int'l, LLC*, 2017 WL 8780453, at *2 (M.D. Fla. Mar. 21, 2017) (Byron, J.).

of PII to payment card data). Therefore, the type of information taken "can play a role in the Court's injury in fact analysis, and, where that information includes personally identifiable information, this factor will weigh in favor of a finding of injury in fact." *21st Century Oncology*, 380 F. Supp. 3d at 1253.

The types of PII stolen in this Data Breach—names and Social Security numbers—can undeniably be used to commit identity theft and have been found to create a material risk of harm for standing purposes. *See*, *e.g.*, *In re Equifax*, 999 F.3d at 1274 (recognizing the "unique risks associated with stolen Social Security numbers").

Third and finally, "the circuits have found that an increased risk of identity theft is more likely to constitute an injury-in-fact where there is evidence that a third party has accessed the secretive information and/or already used the compromised data fraudulently." *21st Century Oncology*, 380 F. Supp. 3d at 1254. This is precisely what Plaintiff alleges here – that the data stolen in this data breach was misused in multiple ways, including attempted financial fraud through the request of the Dish Network promotional check in her name, the use of the stolen data for credit inquiries, and a marked increase in spam emails, texts, and phone calls that Plaintiff believes are related to this Data Breach, due to the timing of the increase and a post-call Google search showing one call as being related to "CHS." Compl. ¶¶ 75-76.

*Reilly v. Ceridian*, 664 F.3d 38 (3rd Cir. 2011) is not instructive. In *Reilly*, the court found no injury based entirely upon the single fact that there was no misuse alleged. In other words, the Third Circuit doesn't follow the same majority rule that the Eleventh Circuit follows and does not weigh three factors in determining the

imminent risk of harm. Instead, the Third Circuit employs what is essentially a single-factor test – no misuse, no injury. *Reilly*, 664 F.3d at 40. That isn't the proper test here.

Defendant's arguments about a promotional check not issuing, or that the information requests to OneMain Financial did not cause her any harm, are unavailing. In a plethora of cases where there has been actual misuse of data or fraudulent activity but no monetary injury from the fraudulent charges (in that the charges were stopped or reversed), courts routinely hold that plaintiffs have Article III standing. *See, e.g.*, *Lewert*, 819 F.3d at 967 (finding standing where plaintiff "asserts that he already has experienced fraudulent charges. Even if those fraudulent charges did not result in injury to his wallet (he stated that his bank stopped the charges before they went through), he has spent time and effort resolving them."); *Rudolph v. Hudson's Bay Co.*, 2019 WL 2023713, at *1 (S.D.N.Y. May 7, 2019) (finding standing where bank notified plaintiff of suspected fraudulent activity on her card and temporarily froze the account, but incurred no fraudulent charges, account was soon unfrozen and plaintiff quickly obtained a replacement card at a branch location of the bank); *Portier v. NEO Tech. Sols.*, 2019 WL 7946103, at *5 (D. Mass. Dec. 31, 2019), *report and recommendation adopted*, 2020 WL 877035 (D. Mass. Jan. 30, 2020 (injury-in-fact where "thefts were discovered and none of the Plaintiffs were "harm[ed] or incur[ed] any expense."). "[S]tanding [i]s not confined to those who c[an] show 'economic harm.'" *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 686 (1973).

Plaintiff here pleads allegations satisfying all three *21st Century Oncology* factors. This Court should find that these allegations establish Plaintiff's Article III standing, based upon the present, imminent, and certainly impending risk of future harm, just as its sister court recently did in *Farmer v. Humana. See Farmer*, 2022 WL 732126, at *4 (finding standing based upon "substantially increased risk of fraud" and "identity theft" as a result of the data breach); *see also In re Mednax Services, Inc., Cust. Data Sec. Breach Litig.*, -- F. Supp. 3d --, 2022 WL 1468057 *6 (S.D. Fla. May 10, 2022) (plaintiffs sufficiently alleged standing where, "the threat of future identity theft has been considered certainly impending or a substantial risk in cases where plaintiffs have alleged actual misuse or actual access to personal data"); *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2022 WL 796367, at *6 (S.D. Fla. Mar. 15, 2022) (finding standing under both *Tsao* and *TransUnion* based upon allegations of a substantial and imminent risk of future identity theft).

### iii.    Plaintiff Alleges Other Injuries That Confer Standing.

Defendant next argues that the other alleged harms do not constitute injury in fact. (Doc. 21 at 12). As shown above, Plaintiff pleads actual misuse of the stolen PII (including the increased spam emails and phone calls), as well as lost time and lost opportunity costs arising from that actual misuse. This all constitutes a concrete injury in fact for standing purposes.

Defendant is incorrect in arguing that the other alleged injuries do not constitute injury in fact.  As Plaintiff will demonstrate, this isn't the case:

### a. Lost or diminished value of PII.

Plaintiff alleges that one of the injuries she suffered is the lost or diminished value of her PII as a result of the Data Breach. Increasingly, where plaintiffs have alleged actual identity theft or misuse of their information, courts have recognized this loss in value as a cognizable injury. *See In re Marriott International, Inc., Customer Data Security Breach Litig.*, 440 F. Supp. 3d 447, 460-461 (D. MD. 2020) (recognizing that "the growing trend across courts that have considered this issue is to recognize the lost property value of [personally identifying] information") (collecting cases). The actual value of Plaintiff's PII is a factual question to be determined later, but Plaintiff is not required to allege that she attempted to sell her PII or that "she was ever forced to accept a value of her PII that was lower than it was prior to the incident." Def's Mot. at 12; *see e.g. In re Marriott*, 440 F. Supp. 3d at 462 (finding that the consumer's personal information value is not "derived solely (or even realistically) by its worth in some imagined marketplace where the consumer actually seeks to sell it to the highest bidder, but rather in the economic benefit the consumer derives from being able to purchase goods and services remotely and without the need to pay in cash or a check.")

### b. Risk of future data security incidents at CHS.

The risk of future data security incidents at CHS is also a concrete injury for purposes of Plaintiff's request for injunctive relief. To establish "injury in fact" for purposes of injunctive relief, a plaintiff must show that he "faces a threat of ongoing or future harm." *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1161 (D. Minn. 2014) (citing *Park v. U.S. Forest Serv.*, 205 F.3d 1034, 1037 (8th Cir.2000)). It is

17

alleged, and undisputed, that Defendant still holds Plaintiff's confidential data here. Compl. ¶ 89.  Plaintiff further alleges that her information is still at a present risk of being the subject of another cyberattack that would cause her future harm, and this entitles her to injunctive relief. *Id.* ¶ 117. In many other data privacy cases, courts have found plaintiffs to have standing to pursue injunctive relief where their data is still at risk.  *See e.g. Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 698 (N.D. Cal. 2019); *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1252 (D. Colo. 2018) (allegations showed that Plaintiffs may again be injured by a data breach, such that they could be entitled to injunction); *In re Target*, 66 F. Supp. 3d at 1161 (plaintiffs had standing to seek injunctive relief of encryption of unsecure data). Having failed in its obligation to protect this information leading to the filing of this suit, injunctive relief in the form of increased cyber security measures, with oversight by an independent and qualified third party to ensure compliance with the injunctive relief ordered by the Court is both warranted and necessary.

### c. Invasion of privacy.

Plaintiff also alleges sustaining a loss of privacy as a result of the Data Breach.[6] The Supreme Court and Circuit Courts have held that the loss of privacy qualifies as an injury-in-fact. *See, e.g.*, *Doe v. Chao*, 540 U.S. 614, 624-25 (2004) (standing where plaintiff was "greatly concerned and worried" by disclosure of his Social Security number and its potential consequences) (citation omitted); *In re Horizon Healthcare*

---

[6] The injury-in-fact for loss of privacy is separate from a legal claim for invasion of privacy.

*Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638 (3d Cir. 2017) ("'unauthorized *disclosures* of information' have long been seen as injurious"); *Silver v. Stripe Inc.*, 2021 WL 3191752, at *6 (N.D. Cal. 2021) (the "Court finds that plaintiffs' allegations that Stripe compiled and disseminated plaintiffs' sensitive data precludes the Court from finding that plaintiffs have no reasonable expectation of privacy").

### d. Emotional distress.

Plaintiff also alleges concrete injury in the form of emotional distress, anxiety, and increased concerns for the loss of her privacy. Compl. ¶ 87. In denying a similar motion to dismiss, the court in *Charlie, supra*, found emotional distress claims to be injury sufficient to establish standing and damages:

> Plaintiffs also allege a variety of non-speculative damages. Plaintiffs allege that, after the data breach, they spent increased time dealing with spam calls and monitoring their credit for suspicious activity. . . Plaintiffs further allege they "suffered a loss of value of their Private Information," . . .and have experienced anxiety and emotional distress because of the increased risk of having their data misused . . . .

*Charlie*, 2022 WL 1078553, at *8. Also, "allegations of emotional distress, *coupled with the substantial risk of future harm*, are sufficiently concrete to establish standing in a claim for damages." *Desue*, 2022 WL 796367, at *5 (emphasis in original). Contrary to CHS's argument, these allegations also plead injury.

### e. Harm from delay in notification.

Defendant's 16-month delay in providing notification caused Plaintiff injury as well. Plaintiff has alleged that the delay in notification left Plaintiff and Class Members "unaware that their sensitive PII had been compromised, and that they were, and

continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm." Compl., ¶ 3. For Plaintiff, the specific consequences of delayed notification include actual misuse of her data. Compl., ¶ 75. These allegations of damage are sufficient at the pleading stage. *See In re Ambry Genetics Data Breach Litig.*, No. SACV2000791CJCKESX, 2021 WL 4891610, at \*10 (C.D. Cal. Oct. 18, 2021) (declining to dismiss California Records Act untimely notification claim where plaintiffs "sufficiently allege that Defendants' delay caused them to incur more damages than they would have incurred with timely notice"); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-CV-2284-H-KSC, 2020 WL 2214152, at \*8 (S.D. Cal. May 7, 2020) (finding harm adequately pleaded in a data breach case where the plaintiffs plausibly alleged that they could not take mitigation steps based upon the delay) (citing *In re Yahoo! Inc. Customer Data Sec. Breach Litig.,* 2017 WL 3727318, at \*41 (N.D. Cal. Aug. 30, 2017)); *see also Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 924-25 (S.D. Cal. 2020) (similar).

In short, Plaintiff alleges multiple concrete injuries that give rise to Article III standing.

**B**.      **Plaintiff's Injuries are Fairly Traceable to the Breach.**

Defendant makes a half-hearted attempt (with effectively no case law citations whatsoever) to challenge the traceability of the injuries Plaintiff claims to this Data Breach. This argument fails on every level. In the Eleventh Circuit:

> A showing that an injury is fairly traceable requires less than a showing of 'proximate cause,' *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003). Even a showing that a plaintiff's injury is indirectly

> caused by a defendant's actions satisfies the fairly traceable requirement. Plaintiffs allege that [Defendant] failed to secure their information on company laptops, and that those laptops were subsequently stolen. Despite Plaintiff's personal habits of securing their sensitive information, Plaintiffs became victims of identity theft after the unencrypted laptops containing their sensitive information were stolen. For purposes of standing, these allegations are sufficient to 'fairly trace' their injury to [Defendant's] failures.

*Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012).

Defendant's traceability argument simply raises a series of speculative factual contentions. Def's Mot. at 16. This argument fails when there is an obvious logical connection between compromise of Plaintiff's Social Security number (the gold standard for fraud, attempted fraud, and identity theft) and that Social Security number being used to attempt to illicitly secure a promotional check in Plaintiff's name. It would be a simple matter for a cybercriminal armed with a Social Security number to obtain phone numbers for spam calls and texts designed to extract additional PII from Plaintiff for purposes of identity theft. At the pleadings stage, these allegations more than suffice. *See In re: Cmty. Health Sys., Inc.*, No. 15-CV-222-KOB, 2016 WL 4732630, at *12 (N.D. Ala. Sept. 12, 2016) ("fairly traceable" element exists for purposes of standing when at least one instance of misuse was pled that would have a logical connection to the data stolen).

Defendant's arguments about the plausibility of the misuse sustained by Plaintiff are an unsupported factual attack on the merits of Plaintiff's injury and damages claims. In the data breach context, courts have repeatedly rejected these factual challenges at the pleadings stage, finding that the courts ordinarily must give plaintiffs an opportunity for discovery and for an appropriate summary judgment

hearing. *In re Mednax*, 2022 WL 1468057, at *10–11 (citations omitted); *In re: Blackbaud*, 2021 WL 2718439, at *7-8 (because plaintiffs would have to prove that defendant caused their injuries to prevail on their substantive claims, the court found that the "facts necessary to prove jurisdiction overlap with facts necessary to prove the merits of the case such that [defendant's] motion is, essentially, an indirect attack on [p]laintiffs' alleged factual merits."). This is particularly true here, where Defendant doesn't offer any expert testimony in support of its factual challenges to traceability, but instead only makes unsupported, speculative argument. Federal courts in Florida have also denied factual challenges to traceability at the pleadings stage. *MSP Recovery LLC v. Progressive Select Ins. Co*., No. 15-20616-CIV, 2015 WL 10457208, at *2 (S.D. Fla. May 18, 2015) (Moreno, J.) (rejecting defendant's factual attack on plaintiff's standing because "[a]t the motion to dismiss stage, the Court finds it inappropriate to resolve this factual dispute…. . . . In so ruling, the Court finds that it is prudent to address the standing issue at the summary judgment stage, where the Court may consider the entire factual record that the parties have developed during the course of discovery."); *Flexiteek Ams., Inc. v. PlasTEAK, Inc*., No. 08–60996–CIV, 2009 WL 890613, at *1 (S.D. Fla. Apr. 1, 2009) (Cohn, J.) (denying without prejudice defendants' motion to dismiss for lack of standing because the motion raised a factual dispute, such that it would be "prudent to address the standing issue at the summary judgment stage where the Court [could] consider the entire factual record" developed during discovery). When standing is challenged based on the pleadings, the court

should "'accept as true all material allegations of the complaint in favor of the complaining party.'" *In re Marriott,* 440 F. Supp. 3d at 457.

The Complaint's allegations establish Plaintiff's Article III standing, and Defendant's Rule 12(b)(1) motion fails.

### III. Plaintiff's Claims are Properly Plead Such That Dismissal Under Rule 12(b)(6) is Not Warranted.

After advancing its unavailing standing arguments, Defendant pivots to assert that Plaintiff's claims are not properly plead, and that dismissal is due under Rule 12(b)(6). These arguments fare no better.

#### A. Legal Standard.

Pursuant to Defendant's request for dismissal under Rule 12(b)(6), the Court must accept "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008); *see also Carmichael v. Kellogg, Brown, and Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). Facial plausibility is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 678. The standard "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claims advanced in the complaint. *Twombly*, 550 U.S. at 545.

### B. Plaintiff Pleads Both Injury and Damages for Her Negligence Claim.

Defendant attacks Plaintiff's negligence claim on two bases – first alleging that Plaintiff doesn't plead injury, and then alleging that Plaintiff doesn't plead damages. Neither argument carries the day for Defendant. As Plaintiff has shown at length above, Plaintiff indisputably pleads multiple forms of concrete injury, including actual misuse of her data and the present and imminently impending risk of harm.

Defendant further argues that Plaintiff's negligence claim fails because she has not suffered any legally cognizable damages under Florida law. However, Defendant is mistaken, and runs afoul of what the eminent jurist Judge Easterbrook calls "new label for an old error. To say that the plaintiffs have standing is to say that they have alleged injury in fact, and if they have suffered an injury then damages are available." *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018). As Plaintiff already showed above, her time spent mitigating the effects of this data breach is both injury and damages for her negligence claim. Judge Scriven recently recognized the same in *Farmer. Farmer*, 2022 WL 732126, at *5, (allegations of time spent "dealing with the consequences of" the data breach, sufficient to plead that Farmer incurred "some actual harm" as a result of the data breach).

In data breach cases where actual or attempted fraud occurred, courts uniformly find that the time and expense spent dealing with the effects of the breach are injury-

in-fact and damages. In *Dieffenbach*, the court concluded that a plaintiff demonstrated injury based on allegations that a data breach required her to "spend time sorting things out with the police and her bank," noting that "the value of one's own time needed to set things straight is a loss from an opportunity-cost perspective." *Id.* at 828. Similarly here, Plaintiff makes allegations of lost time to "set things right." Plaintiff has plausibly alleged actual damages in the form of, *inter alia*, spending time remedying or mitigating harms as a result of the Breach. These damages are present, actual, and certainly legally cognizable.[7]

In denying a motion to dismiss and finding legally cognizable damages, courts note that "[i]ncreased time spent monitoring one's credit and other tasks associated with responding to a data breach have been found by other courts to be specific, concrete, and non-speculative." *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, Case No. 3:19-cv-2284-H-KSC, 2020 WL 2214152, at *4 (S.D. Cal. May 7, 2020) (citation omitted); *Corona v. Sony Pictures Entm't, Inc.*, No. 14–CV–09600 RGK (Ex), 2015 WL 3916744, at *4 (C.D. Cal. June 15, 2015). A score of other decisions concur.[8]

---

[7] *See, e.g., Rudolph v. Hudson's Bay Co.*, No. 18-CV-8472 (PKC), 2019 WL 2023713, at *7 (S.D.N.Y. May 7, 2019) (plaintiff identified a concrete and particularized loss based on actual time spent responding to the breach . . .identifiable, already-incurred loss of time and money); *Walters v. Kimpton Hotel & Rest. Grp., LLC*, 2017 WL 1398660 (N.D. Cal. Apr. 13, 2017) ("Walters sufficiently alleged 'actual damages' flowing from the alleged breach, including having to 'secure and maintain' credit monitoring services (which presumably come at a cost) and other 'out-of-pocket expenses and the value of . . . time reasonably incurred to remedy or mitigate' the breach."); *Bass*, 394 F. Supp. 3d at 2039 (acknowledging loss of time as the harm for negligence).

[8] *See Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 696 (N.D. Cal. 2019) ("[t]he time [plaintiff] spent reacting to this data breach may be recoverable as damages in its own right."); *see also In re Marriott Int'l I*, 440 F. Supp. 3d at 460; *see also Anderson*, 659 F.3d at 165-67 (finding it reasonable and foreseeable that a victim of identity theft would take steps to mitigate the consequences); *Witriol v. LexisNexis Grp.*, No. C05-02392 MJJ, 2006 WL 4725713, at *6 (N.D. Cal. Feb. 10, 2006) (holding

Moreover, courts recognize the lost value of PII as a viable damages theory. *See In re Experian*, 2016 WL 7973595, at *5 ("A growing number of federal courts have now recognized Loss of Value of PII as a viable damages theory.") (quoting *In re Anthem*, 2016 WL 3029783, at *43); *In re Facebook Privacy Litig.*, 572 F. App'x 494; *see also In re Marriott* , 440 F. Supp. 3d at 461. Plaintiff adequately alleges that her PII is a valuable commodity, that a market for the information exists, and that the stolen PII is likely being sold on the dark web to Plaintiff's detriment. Compl. ¶¶ 44, 59. Plaintiff even puts an explicit value on her information -- $40 to $200 on the Dark Web. *Id.* Plaintiff plainly alleges damages here.

Not only that, but Plaintiff has no requirement to prove damages because she is entitled to nominal damages upon the establishment of her negligence claim. Florida law provides that nominal damages are awarded to vindicate an invasion of one's legal rights where, although no physical or financial injury has been inflicted, the underlying cause of action has been proved to the satisfaction of a jury. *Lassiter v. Int'l Union of Operating Eng'rs*, 349 So. 2d 622 , 625-26 (Fla. 1976); *see also Mangel v. Daza*, No. 2:19-CV-525-FtM-38MRM, 2020 WL 8838040, at *1 (M.D. Fla. June 3, 2020) (a nominal damages award is proper in a tort case when no damages have been proven); *Fossler v. Blair*, 90 F. Supp. 574, 576–77 (S.D. Fla. 1950) (holding plaintiff was entitled to at least

---

costs associated with monitoring and repairing credit compensable); *Lewert*, 819 F.3d at 967-68 (time and effort to monitor credit card statements and other financial information is concrete and particularized injury); *In re Experian*, 2016 WL 7973595, at *5 (plaintiffs may recover out-of-pocket costs incurred because of data breach, including for time reviewing credit accounts); *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 914 (N.D. Cal. 2009) (plaintiff can recover monitoring damages if there is "significant exposure of his personal information.").

nominal damages in negligence action); *Cason v. Baskin*, 30 So. 2d 635 (Fla. 1947) (permitting the recovery of nominal damages in a tort case when no actual damages shown); *Atl. Co. v. Orendorff*, 22 So. 2d 260, 262–63 (1945) (same).

Because Plaintiff is entitled to at least nominal damages if she proves her claim of negligence, the damages element is satisfied, along with the injury element. Plaintiff has therefore sufficiently pleaded her claim for negligence.

### C. Plaintiff's Negligence *Per Se* Claim is Properly Plead.

Plaintiff asserts a negligence *per se* claim on behalf of herself and a nationwide class premised on Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits unfair or deceptive trade practices. The failure to maintain reasonable data security measures to safeguard confidential consumer information is an unfair practice prohibited by the Act. *See, e.g., F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 240 (3d Cir. 2015). Plaintiff alleges Defendant violated Section 5 by not having reasonable data security, she is within the class the section was intended to protect, and the section was meant to protect against the harm that occurred. Compl. ¶¶ 72–73, 129–133. Such allegations properly state a claim for negligence *per se* under Section 5, as at least six courts have held in other data breach cases, including recently in *Purvis v. Aveanna Healthcare, LLC*, 563 F. Supp. 3d 1360, 1374 (N.D. Ga. 2021).[9] What's noteworthy about these cases is

---

[9] *See also, e.g., Equifax*, 362 F. Supp. 3d at 1327; *In re The Home Depot Inc. Customer Data Sec. Litig.*, 2016 WL 2897520, at *4 (N.D. Ga. May 16, 2016); *In re Arby's Rest. Grp. Inc. Litig.*, 2018 WL 2128441 at *8-9(N.D. Ga. Mar. 5, 2018); *In re Marriott*, 440 F. Supp. 3d at 479; *First Choice Fed. Credit Union v. Wendy's Co.*, 2017WL 9487086, at *4 (W.D. Pa. Feb. 13, 2017), *report and recommendation adopted*, 2017 WL 1190500 (W.D. Pa. Mar. 31, 2017).

that not only did they allow the negligence *per se* claim to proceed at the pleadings stage, but they did so in cases where the putative classes were nationwide classes, with no clear choice of law analysis applying to all class members. This case is obviously similar, and where the FTC Act provides a uniform national standard of care, it would be erroneous to dismiss this claim relative to Class Members from states that would allow a negligence *per se* claim even in the absence of a private right of action.

### D. Plaintiffs' Unjust Enrichment Claim is Sufficiently Pleaded

To state a claim for unjust enrichment, a plaintiff must allege: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained the benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value of it to the plaintiff. *Francois v.  Hatami*, No. 21-22528-CIV, 2021 WL 4502336, at *6 (S.D. Fla. Oct. 1, 2021). Defendant argues that Plaintiff did not confer a benefit on Defendant because Defendant did not receive any additional value from Plaintiff's PII. But additional value is not required. The benefit conferred on CHS by Plaintiff and Class Members is the value of their PII itself. CHS could not do its job vetting federal employees without that PII and reaps substantial economic benefits from the use of the PII to carry out its function. It would be unjust for Defendant to now retain this benefit since they failed to secure the data Plaintiff and Class Members entrusted to it.

In *In re: Arby's*, *supra*, the court declined to dismiss a similar unjust enrichment claim asserted in a data breach case. Defendant also ignores compelling case law from many other jurisdictions declining to dismiss unjust enrichment claims in data breach

cases. "[C]ourts have concluded that the failure to secure a party's data can give rise to an unjust enrichment claim where a defendant accepts the benefits accompanying a plaintiff's data and does so at the plaintiff's expense by not implementing adequate safeguards, thereby making it 'inequitable and unconscionable' to permit defendant to retain the benefit of the data (and any benefits received therefrom), while leaving the plaintiff party to live with the consequences." *In re Capital One Consumer Data Sec. Breach Litig.*, 2020 WL 5629790, at *22 (E.D. Va. Sept. 18, 2020).

Also, as Defendant admits, Plaintiff is allowed to plead unjust enrichment (a quasi-contract claim) in the alternative. Federal courts in Florida have repeatedly allowed unjust enrichment claims to proceed in tandem with negligence claims in data breach cases. See *Weinberg v. Advanced Data Processing, Inc.,* 147 F. Supp. 3d 1359, 1368 (S.D. Fla. 2015); *Resnick*, 693 F.3d at 1328. Defendant's arguments against unjust enrichment fall flat.

## IV.     Defendant's Derivative Sovereign Immunity Claims Were Previously Rejected by a Federal Appellate Court, and Should Likewise Be Rejected Here.

Defendant's next argument is one that was rejected by a case that CHS cites itself. In *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.* ("*In re OPM*"), 928 F.3d 42, 68 (D.C. Cir. 2019), the DC Circuit found "no basis" for the application of derivative sovereign immunity that the contractor (KeyPoint) claimed entitlement to:

> OPM's contract obligated KeyPoint to meet the same standards for protecting personal information that the Privacy Act imposes directly on OPM. Because the improper conduct alleged would have violated the Privacy Act if committed by OPM itself and because KeyPoint's challenged misconduct was not directed by OPM, there is no sovereign immunity for KeyPoint to derive.

*Id.* In reaching this holding, the DC Circuit raised several other points germane to the analysis here. First, as a private company, a contractor like CHS here "ordinarily would not enjoy immunity against the statutory and tort claims" asserted by Plaintiff. *Id.* Second, CHS fails to show (nor can it) that its actions were "authorized and directed by the Government of the United States," and derivative sovereign immunity only applies to such actions. *Id.*

Third, just as in *In re OPM*, CHS failed to place in the record its contract with the TSA, making it "particularly difficult for it to establish, on a motion to dismiss, that its alleged security lapses were 'authorized and directed' by" the federal agency. *Id.* at 69. Fourth, even if CHS were to demonstrate that the agency "authorized and directed" it to comply with the Privacy Rule, the allegations of the Complaint expressly allege that CHS failed to fulfill these obligations. *Id.* CHS does not argue that the TSA "authorized and directed" it to design its system with the security flaws that Plaintiff identifies, and therefore cannot wrap itself in derivative immunity garb on the ground that it "simply performed as the Government directed." *Id.*

Just as in *In re OPM*, CHS's derivative sovereign immunity claim fails due to CHS's inability to point to a contractual provision or other TSA direction "authorizing or directing the very gaps in security protections" over which Plaintiff is suing. *Id.* at 70. Also, CHS overreads the Privacy Act in the same way that the overruled district court did in *In re OPM*:

> When the Privacy Act speaks of contractors as "employees" of the agency, it does so for the purpose of extending criminal liability to contractors and their

> employees if they violate certain Privacy Act requirements. 5 U.S.C. § 552a(i),
> (m)(1). Congress's decision to subject federal contractors to the same Privacy
> Act criminal prohibitions as their agency employers hardly augurs in favor of
> according those same contractors more protection from civil liability than the
> agency itself.

*Id*. at 71. *In re OPM* is on all fours with this case, and Defendant's derivative sovereign

immunity contention fails for the same reasons.

## V.     Plaintiff's Claims are Not Preempted by Federal law.

Defendant's pre-emption argument is not well-taken. Defendant alleges that a

federal statute with no private right of action against a private company pre-empts state

tort law and quasi contract claims. Defendant is effectively parroting an argument not

even raised by the appellants (and thereby waived) in *In re OPM*, 928 F.3d 42. This

argument was only raised as an academic exercise in the concurrence in *In re OPM*,

928 F.3d at 81.

No court has adopted the reasoning of the concurrence in *In re OPM* on this

point. This is because Plaintiff does not seek to impose upon CHS any state law

requirements or standards that are different from, in addition to, or that are otherwise

not identical with any requirements imposed by federal law. Federal statutes only

preempt state requirements to the extent that they are "different from, or in addition

to the requirements imposed by federal law." *Byrnes v. Small*, 60 F. Supp. 3d 1289,

1296 (M.D. Fla. 2015). That isn't the case here at all.  Indeed, Plaintiff's negligence

and negligence *per se* claims expressly seek to impose the FTC Act's standards on

Defendant. Compl. ¶¶ 107, 129-130

Plaintiff's claims here are indisputably "parallel" claims. State law claims premised on violations of federal regulations that "parallel," rather than add to federal requirements are not preempted. *Byrnes*, 60 F. Supp. 3d at 1296. There is no way that CHS could be held liable under state law for its data breach failings here without having violated federal law, because the standards of care are identical. *See Wolicki–Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1300 (11th Cir.2011) (state law claims that parallel rather than add to federal requirements not preempted). Defendant's preemption argument does not bar Plaintiff's state law claims.[10]

## VI.    The Complaint is not a Shotgun Pleading.

Defendant's final argument betrays a complete misunderstanding of what constitutes a "shotgun pleading." A shotgun pleading is one in which "each count . . . adopts the allegations of all preceding counts." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 & n.11 (11th Cir. 2015) (collecting cases). On its face, none of the Complaint's 3 counts adopt the allegations of the preceding counts. Count One, the negligence count, encompasses paragraphs 102 to 117, and none of these paragraphs are incorporated into Counts Two or Three. Similarly, Count Two, the unjust enrichment count, encompasses paragraphs 118 to 127, and none of those paragraphs are incorporated into Count Three. Defendant simply doesn't understand what constitutes a shotgun pleading, and this argument lacks any merit.

---

[10] Defendant's preemption argument does, however, provide good grounds for Plaintiff to potentially amend her complaint to add a claim under 5 U.S.C. § 552a(g)(1)(D) – claims that carry with it $1000 statutory damages and attorneys' fees.

Defendant's only argument in its entire motion that has merit is that the Plaintiff didn't use a 13-point font for the Complaint.  Plaintiff cannot deny this is the case – the Complaint is in 12-point font. But dismissing the Complaint over this type-setting error would be an extreme remedy, and one that wouldn't advance the efficient administration of justice. The statute of limitations hasn't run, and Plaintiff could simply turn around and re-file this complaint with the correct font-size.  Rather than waste the Court's resources that way, Plaintiff offers an apology for the inadvertent typesetting error, and, to the extent the Court believes it necessary, seeks leave to submit a revised version of the Complaint in 13-point type set, which the Court should deem filed *nunc pro tunc* to the original filing date.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Defendant's motion.

Dated: June 17, 2022                          Respectfully submitted,

/s/ *John A. Yanchunis*
JOHN A. YANCHUNIS – **Trial Counsel**
Florida Bar No. 324681
jyanchunis@ForThePeople.com
PATRICK A. BARTHLE II
Florida Bar No. 99286
pbarthle@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402

 /s/ David K. Lietz
David K. Lietz (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

Gary M. Klinger*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
gklinger@milberg.com

*Attorneys for Plaintiff and the Proposed Class*
*\*Pro hac vice application forthcoming*

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 17, 2022, the foregoing document was

filed via the Court's ECF system, which will cause a true and correct copy of the same

to be served electronically on the following ECF-registered counsel of record:

- **Patrick A. Barthle**
  pbarthle@forthepeople.com,jcabezas@forthepeople.com
- **Lindsay Elizabeth DeCarlo**
  lindsay.decarlo@lewisbrisbois.com,flcourtmail@lewisbrisbois.com,alyson.waller@lewisbrisbois.com
- **Gary M. Klinger**
  gklinger@masonllp.com,6837213420@filings.docketbird.com,theath@masonllp.com

34

- **David K. Lietz**
  dlietz@milberg.com,smartin@milberg.com,gklinger@milberg.com,dlietz@ecf.courtdrive.com
- **John Allen Yanchunis**
  jyanchunis@forthepeople.com,classaction-admin@ftp.com,jcabezas@forthepeople.com


  /s/ *David K. Lietz*
  David K. Lietz