## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| SHANNON ARBUTHNOT, individually and on behalf of all others similarly situated,<br><br>       *Plaintiff,*<br>  v.<br><br>ACUITY – CHS, LLC f/k/a COMPREHENSIVE HEALTH SERVICES LLC,<br><br>       *Defendant.* | Case No. 6:22-cv-658-PGB-DCI |

## PLAINTIFF'S UNOPPOSED MOTION TO REOPEN CASE, DIRECT CLASS NOTICE AND GRANT PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff, Shannon Arbuthnot ("Plaintiff" or "Settlement Class Representative"), respectfully moves for preliminary approval of the Settlement; for certification of the Settlement Class;[1] for appointment of Class Representative, Class Counsel, and the Claims Administrator; and approval of the notice plan.

## I.  INTRODUCTION

On or about on April 4, 2022, Plaintiff filed this putative class action alleging that Defendant, Acuity – CHS, LLC ("Acuity" or "Defendant") (all parties collectively referred to as the "Parties"), failed to adequately safeguard its patients' electronically stored personally identifiable information ("PII") in connection with a

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release (hereinafter "S.A."), which is attached hereto as **Exhibit 1**.

cybersecurity incident announced by Acuity on or about February 15, 2022 ("Data Breach"). (Doc. 1). Therein Plaintiff alleged causes of action against Acuity for: (i) negligence; (ii) unjust enrichment, and (iii) negligence *per se*. On May 27, 2022, Acuity filed a Motion to Dismiss Plaintiff's Complaint as a whole for failure to state a claim under Rules 12(b)(1) and 12(b)(6). (Doc. 21). Acuity's Motion to Dismiss was fully briefed as of July 18, 2022. (Doc's 26, 32).

While Acuity's Motion was still pending and with the benefit of formal discovery, the Parties agreed to engage in voluntary settlement negotiations. S.A. at 1. After multiple weeks of arms'-length negotiation between competent and experienced counsel for the Parties, on February 2, 2023, the Parties agreed to the terms of a settlement, and filed a Notice of Settlement. (Doc. 41). Considering the Notice, this Court entered an order administratively closing the case, subject to reopening within 60-days. (Doc. 42).

The Parties now wish to fully and finally resolve their dispute on a class-wide basis, pursuant to terms that were negotiated between them. Those terms are memorialized in the Settlement Agreement and Release, which are set forth more fully below, and attached hereto as **Exhibit 1** ("Settlement Agreement" or "S.A."). This Settlement Agreement provides for the resolution of all claims asserted, or that could have been asserted, against Defendant relating to the Data Security Incident, by and on behalf of Plaintiff and Settlement Class Members.

The Settlement provides for the payment of claims made by Settlement Class Members for (a) documented out of pocket expenses incurred as a result of the Data

Security Incident, of up to $500.00 per person; (b) compensation for up to 3 hours of lost time, at $20/hour, for time spent dealing with the Data Breach; (c) up to $3,500.00 per person in compensation for Extraordinary Losses; as well as (d) two (2) years of credit monitoring for each Settlement Class Member. S.A. § 3. The Settlement also helps protect the PII of Plaintiff and Settlement Class Members going forward via the security-related improvements Acuity has implemented related to its cybersecurity since the Data Security Incident. S.A. § 4.

## II. BACKGROUND

### A. Information About the Settlement

While Acuity's Motion to Dismiss was pending, and with the benefit of formal discovery—including the deposition of Acuity's corporate representative—the Parties agreed to engage in voluntary settlement negotiations. Specifically, proposed Class Counsel Lietz reached out to defense counsel to gauge Defendant's interest in a possible resolution. *See* Declaration of David Lietz, attached as **Composite Exhibit 2** ("Lietz Decl."), ¶ 17. After getting a positive response, Mr. Lietz prepared and forwarded a formal demand to defense counsel that included a draft term sheet that laid out the outlines of a potential settlement. *Id.* The terms sheet included multiple "buckets" of relief, each of which needed to be negotiated separately. There was considerable back and forth on each and all of these "buckets" of relief, with both Parties being guided by their knowledge of data breach cases generally, and settlements achieved in other data breach cases specifically. *Id.*

After extensive arm's length settlement negotiations, the parties reached an agreement on the essential terms of settlement. *Id.* ¶ 18. The subject of attorneys' fees, costs, and expenses, subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties. *Id.* ¶ 21.

Based on Plaintiff's counsel's independent investigation of the relevant facts and applicable law, experience with many other data breach cases, including data breach cases in this District and before this Court, and the information provided by Defendant, Plaintiff's counsel submits that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. *Id.* ¶ 23. Consequently, the parties worked together to prepare a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto.

**B. The Terms of the Settlement Agreement**

**1. The Settlement Class**

The proposed Settlement Class is defined as the:

> All persons to whom Defendant sent Notice of the Data Security Incident that gives rise to this suit (the "Data Security Incident").
>
> Specifically excluded from the Settlement Class are: (i) Acuity's officers and directors; (ii) any entity in which Acuity has a controlling interest; and (iii) the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Acuity (not including employees). Also excluded from the Settlement Class are members of the judiciary to whom this case is assigned, their families and members of their staff. The Settlement Class is estimated to include approximately 106,910 individuals.

S.A. § 1.

**2. The Settlement Benefits**

4

Under the Settlement, Settlement Class Members are eligible to receive the following benefits:

- Reimbursement of Ordinary Losses of up to $500.00;

- Reimbursement of Extraordinary Losses of up to $3,500.00;

- Reimbursement of Attested Time up to 3 hours of lost time, at $20/hour;

- Two (2) years of Credit Monitoring services;

- Improved Security Measures implemented by Acuity to ensure the protection of the PII of Plaintiff and Settlement Class Members.

S.A. §§ 3, 4.

Without reducing the amount available to the Settlement Class, Acuity will also separately pay for the cost of settlement administration and notice, including the payment of the Claims Administrator and the Claims Referee, if needed. S.A. § 8(c). Likewise, without reducing the amount available to the Settlement Class, Acuity will pay the amount approved by the Court for attorneys' fees, costs, and expenses, that does not exceed $255,000.00. S.A. § 7.

### 3. Proposed Notice Program

The Parties propose Kroll Settlement Administration LLC ("Kroll") to be appointed as the Claims Administrator. Kroll is a nationally recognized class action notice and administration firm that has designed a class notice program for this case, which the parties and Kroll believe is an effective class notice program.

Subject to Court approval, this notice program involves providing the Short Form Notice, either by postcard notification or by email notification (when valid email

addresses are available) of the proposed settlement to the same population as Acuity's pre-Lawsuit Data Security Incident notification. S.A. § 8(a). The forms of Notice are attached as Exhibits B and C to the Settlement Agreement. A declaration from Mr. Scott M. Fenwick with additional details about the notice program is attached hereto as **Exhibit 3** ("Fenwick Decl.").

The Claims Administrator will also establish a toll-free telephone number and P.O. Box by which Settlement Class Members can seek additional information regarding the Settlement Agreement, as well as a Settlement Website. S.A. § 8(a). In addition to the Short and Long Form Notices, the Settlement Website will include information about the Settlement, related case documents, and the Settlement Agreement. Settlement Class Members will also be able to submit claims electronically via the website, or download claim forms and submit them via first-class U.S. mail.

Within ten (10) days after entry of the Preliminary Approval Order,[2] Acuity will provide a class list to the Claims Administrator with the last-known names, addresses, and emails (if any) of the Settlement Class Members. S.A. § 13. Within 30 days after entry of the Preliminary Approval Order (the "Notice Deadline"), the Claims Administrator will send the Short Notice to Settlement Class Members, which notice will advise that Settlement Class Members have 90 days from the date the Short Form Notice is sent to submit a claim for compensation. S.A. § 13. Before mailing the notice, the Claims Administrator will update the Settlement Class Members address through

---

[2] A proposed Preliminary Approval Order is attached the Settlement Agreement as its **Exhibit D**.

a reliable service of the Claims Administrator's choosing that is consistent with its customary business practices. If a notice is returned to the Claims Administrator as undelivered and a forwarding address is provided, the Claims Administrator will re-mail one additional time to the new address. *Id.*

The notice informs Settlement Class Members of the nature of the action, the litigation background, the terms of the agreement, the relief provided, Settlement Class Counsel's request for fees, costs, and expenses, and the scope of the release and the binding nature of the Settlement on Class Members. The notice also describes the procedure for objecting to the Settlement; advises Settlement Class Members that they have the right to opt out and describes the consequences of opting out; and will state the date and time of the final approval hearing (subject to this Court's scheduling), advising that the date may change and how to check the Settlement Website.

All costs of settlement administration and notice will be separately paid for by Acuity. S.A. § 8(c). Plaintiff is informed that such costs are expected to be approximately $115,000.00. Comp. Exh. 2, Yanchunis Decl. ¶ 20.

### 4. Exclusion and Objection Procedures

The notice advises Settlement Class Members of their rights to object or opt out of the Settlement, provides instructions for doing so, and directs Settlement Class Members to the Settlement Website for more information. *See* S.A. Exh. B. A request for exclusion must be in writing and must state the name, address, and phone number of the person seeking exclusion; must contain a signed statement to the following effect: "I request to be excluded from the Settlement Class in the Acuity lawsuit"; and

must be mailed to the Claims Administrator at the address provided in the Class Notice no later than 60 days after the Notice Deadline, or any other date set by the Court. S.A. § 14. To object, the Settlement Class Member must file with the Court and mail to Class Counsel and Acuity's counsel written objections that include: (1) the title of the case; (2) the Settlement Class Member's name, address, and telephone number; (3) all legal and factual bases for any objection; and (4) copies of any documents that the Settlement Class Member wants the Court to consider. S.A. § 15.

### 5. Attorneys' Fees, Costs, and Expenses

Plaintiff has agreed not to seek attorneys' fees, costs, and expenses ("Class Counsel Payment") greater than $255,000.00, which will be sought at least 30 days before the deadline for Settlement Class Members to Exclude themselves or Object, or any other deadline set by the Court, and Acuity will pay the amount approved by the Court that does not exceed $255,000.00. S.A. § 7. Notably, the parties negotiated Class Counsel's attorneys' fees, costs, and expenses only after they had reached an agreement on the benefits afforded to the Settlement Class. Lietz Decl., ¶ 21.

### 6. Release of Claims

Under the Settlement, each Settlement Class Member will release:

> any and all claims or causes of action, whether known or unknown, that concern, refer or relate to (a) the Data Security Incident; and (b) all other claims or causes of action that were pleaded, or that could have been pleaded based on the Data Security Incident and/or Acuity's response to the Data Security Incident in the Lawsuit.

S.A. § 10.

## III. ARGUMENT

## A. Certification of the Settlement Class is Appropriate

Prior to granting preliminary approval of a proposed settlement, the Court should first determine the proposed Settlement Class is appropriate for certification. *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P 23(a)(1)–(4); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Additionally, where (as here) certification is sought under Rule 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate and that a class action is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

Judges in this district have noted—many times—that "[a] class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue."[3]

---

[3] *Iverson v. Advanced Disposal Servs., Inc.*, 2021 WL 4943585, at *3 (M.D. Fla. Aug. 6, 2021) (Toomey, M.J.), *report and recommendation adopted*, 2021 WL 4943586 (M.D. Fla. Sept. 17, 2021) (Davis, J.); *Flores v. Acorn Stairlifts, Inc.*, 2020 WL 9549903, at *1 (M.D. Fla. Jan. 31, 2020) (same) (Smith, M.J.) *report and recommendation adopted*, Case No. 6:19-cv-00844, ECF No. 49 (M.D. Fla. March 24, 2020) (Berger, J.).

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. This case meets all of the Rule 23(a) and (b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

**1.   The Proposed Settlement Class Meets the Requirements of Rule 23(a).**

**a.   Numerosity.**

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997).

Here, Defendant identified approximately 106,910 people in the Settlement Class. S.A. § 1. Thus, numerosity is easily satisfied.

**b.   Commonality.**

The second prerequisite to certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of

classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). The commonality requirement presents a low hurdle, as it does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 131 S. Ct. at 2556. Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members."[4] Here, commonality is readily satisfied.

The Settlement Class Members are joined by the common questions of law and fact that arise from the same event: the Data Security Incident. *See Manno*, 289 F.R.D. at 685. Specifically, Plaintiff alleges, among others, the following common questions:

    a. Whether Acuity unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII;

    b. Whether Acuity failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c. Whether Acuity data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

    d. Whether Acuity data security systems prior to and during the Data Breach were consistent with industry standards;

    e. Whether Acuity owed a duty to Plaintiff and Class Members to safeguard their PII;

---

[4] *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (cleaned up) (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009)); *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 642 (M.D. Fla. 2011) (citing *Williams*, 568 F.3d at 1355).

    f.   Whether computer hackers obtained Plaintiff's and Class Members' PII in the Data Breach;

    g.   Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Acuity's misconduct;

    h.   Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

(Doc. 1 ¶ 44). Such issues, focusing on Defendant's conduct, satisfy commonality.[5]

### c.  Typicality.

The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory."[6] Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, typicality is satisfied for the same reasons as commonality. Specifically, Plaintiff's claims are typical of those of other Settlement Class Members because they arise from the Data Security Incident. They are also based on the same legal theory,

---

[5] *See, e.g.*, *In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the Data Security Incident"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching classwide resolution.").

[6] *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.").

i.e., that Acuity had a legal duty to protect Plaintiff's and Class Members' PII. Because there is a "sufficient nexus" between Plaintiff's and Settlement Class Members' claims, typicality is met. *Hines*, 334 F.3d at 1256.

### d. Adequacy.

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 NEWBERG ON CLASS ACTIONS § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. At this stage, there is nothing suggesting this requirement is not satisfied. Plaintiff is a member of the Settlement Class and does not possess any interests antagonistic to the Settlement Class. She provided her PII to Acuity and alleges it was compromised by the Data Security Incident, as the PII of the Settlement Class was also allegedly compromised. Plaintiff's claims coincide identically with the claims of the Settlement Class, and Plaintiff and the Settlement Class desire the same outcome of this litigation. As such, Plaintiff has prosecuted this case for the benefit of all Settlement Class Members.

In addition, proposed Settlement Class Counsel are experienced in class action litigation and have submitted their skills and experience in handling class litigation around the country and in this District. Comp. Exh. 2, Lietz Decl., ¶¶ 2-11; Yanchunis Decl., ¶¶ 3–10; Barthle Decl. ¶¶ 2–9. Because Plaintiff and her counsel have devoted substantive time and resources to this litigation, the adequacy requirement is satisfied.

### 2. The Predominance and Superiority Requirements of Are Met.

In addition to meeting Rule 23(a), the proposed Settlement Class must also meet one of the three requirements of Rule 23(b). *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 660 (S.D. Fla. 2011). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that: (1) questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700. The Settlement Class readily meets these requirements.

### a. **Predominance.**

The predominance requirement focuses on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate "if they have a direct impact on every class member's effort to establish

liability and on every class member's entitlement to injunctive and monetary relief."[7]

Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all Settlement Class Members of the class in a single adjudication." *In re Checking*, 275 F.R.D. at 660. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"[8]

Common issues readily predominate here because the central liability question in this case—whether Acuity failed to safeguard Plaintiff's PII, like that of every other Class member—can be established through generalized evidence.[9] Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Acuity had a duty to exercise reasonable care in safeguarding, securing, and protecting their PII and whether Acuity breached that duty. The many common questions that arise from Acuity's conduct predominate over individualized issues. Other courts have recognized that common issues arising from a data breach

---

[7] *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (citing *Klay*, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . .").

[8] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, 123–124 (3d ed. 2005)).

[9] *See Klay*, 382 F.3d at 1264 ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.").

predominate.[10] Because the claims are being certified for settlement purposes, there are no manageability issues.[11]

### b. Superiority.

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'"[12] Factors the Court may consider are: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class.

Here, resolution of numerous claims in one action is far superior to individual

---

[10] *See, e.g., Countrywide*, 2009 WL 5184352, at *6–7 (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' information); *Heartland*, 851 F. Supp. 2d at 1059 (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the Data Security Incident, and the resulting injury to each class member from that conduct").

[11] *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

[12] *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that Settlement Class Members have an interest or incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources and expense required to prosecute such an action.[13] Additionally, the Settlement will give the parties the benefit of finality.

**B. Plaintiff's Counsel Should Be Appointed as Settlement Class Counsel.**

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, and as fully explained in Messrs. Lietz's, Yanchunis's, and Barthle's Declarations, proposed Settlement Class Counsel have extensive experience

---

[13] *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually").

prosecuting similar class actions, as well as other complex litigation, and have the experience to assess the risk of continued litigation and appeals. Proposed Settlement Class Counsel have diligently investigated and prosecuted the claims here, have dedicated substantive resources to the litigation of those claims, and have successfully negotiated the Settlement to the benefit of Plaintiff and the Settlement Class. *Id.* Accordingly, the Court should appoint David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC, and John A. Yanchunis and Patrick Barthle of Morgan & Morgan as Settlement Class Counsel.

## C. The Settlement Is Fair, Reasonable, and Adequate.

After determining that certification is appropriate for, courts next consider whether the proposed settlement warrants preliminary approval. Under Rule 23(e), the Court should approve a class action settlement if it is fair, reasonable, and adequate.[14]

Further, it must be noted that there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation.[15] Thus, while district courts have discretion in deciding whether to approve a proposed

---

[14] *See Taylor v. Citizens Telecom Servs. Co., LLC*, 584 F. Supp. 3d 1101, 1103–04 (M.D. Fla. 2022) (finding the "Settlement Agreement, including all Exhibits thereto, [were] entered into in good faith and [thus were] fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members").

[15] *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, No. 00-cv-14017, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002). This is because class action settlements ensure class members a benefit, as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993); *see also, e.g., Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (finding that the policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain).

settlement, deference should be given to the consensual decision of the Parties. *Warren*, 693 F. Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation").

### 1. The Settlement Satisfies Amended Rule 23(e)

Rule 23(e)(1) provides that notice should be given to the class, and hence, preliminary approval should be granted, where the Court "will likely be able to" (i) finally approve the settlement under Amended Rule 23(e)(2), and (ii) certify the class for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii); *see also id.* 2018 Amendment Advisory Committee Notes. As explained above, the Class here meets the criteria for certification of a settlement class, including all aspects of numerosity, commonality, typicality, adequacy, and predominance. Rule 23(e)(1)(B)(ii) is therefore met.

As to Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon a finding that the settlement is "fair, reasonable, and adequate" after considering:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).  Here, the Court will "likely be able to" finally approve this Settlement and thus preliminary approval should be granted.

### a. Adequacy of Representation and Arm's Length Negotiation

As explained above, Plaintiff and Class Counsel have adequately represented the Class. *See supra* § III.A.1.d. Moreover, the Settlement was negotiated at arm's length. Lietz Decl., ¶ 17–18.[16] Subsections (A) and (B) are therefore met.

### b. Adequacy of Relief

The relief offered by the Settlement is adequate considering the risks of continued litigation. Although Plaintiff is confident in the merits of her claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Plaintiff's claims would still need to succeed against the pending motion to dismiss (Doc. 21), and on a motion for class certification, and likely survive an appeal thereof.

The Settlement provides for the payment of claims made by Settlement Class Members for (a) documented out of pocket expenses incurred of up to $500.00 per person; (b) compensation for up to 3 hours of lost time, at $20/hour, for time spent dealing with the Data Breach; (c) up to $3,500.00 per person in compensation for Extraordinary Losses; as well as (d) two (2) years of credit monitoring for each Settlement Class Member. S.A. § 3. The Settlement also helps protect the PII of Plaintiff and Settlement Class Members going forward via the security-related

---

[16] *See also Lipuma*, 406 F. Supp. 2d at 318-19 (approving settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

improvements Acuity has implemented related to its cybersecurity since the Data Security Incident. S.A. § 4. Given the relief available, Class Counsel believe the results achieved are well within the range of possible approval.

Here, the central legal issues affecting the Settlement Class are challenges to standing as well as attacks on the substantive claims Plaintiff has alleged. *See* (Doc. 21). Nevertheless, and despite the strength of the Settlement, Plaintiff is pragmatic in her awareness of the various defenses available to Acuity, as well as the risks inherent to continued litigation. Acuity consistently denied the allegations and made clear that it would vigorously defend this case through trial as needed.

Settlement relief will be distributed via a straight-forward claims process utilizing an easy-to-understand claim form. S.A. §§ 4, 6. Payments for approved claims will be distributed as soon as practicable after allocation and distribution are determined by the Claims Administrator following the Effective Date. S.A. § 6.

Attorneys' fees, costs, and expenses were negotiated separate, apart, and after reaching agreement on the Class relief. Lietz Decl. ¶ 21. Plaintiff will seek attorneys' fees, costs, and expenses for prosecuting this action not to exceed $255,000.00. S.A. § 8. Attorneys' fees, costs, and expenses, in whatever amount set by the Court, are to be paid within 10 business days of the Effective Date or the Court's Order approving this award, whichever is later. S.A. § 7.

Accordingly, the relief provided by the Settlement is fair, reasonable, and adequate especially when considering the inherent costs, risks, and delay were this matter to proceed.  Subsection (C) of Rule 23(e)(2) is therefore met.

### c. The Settlement Treats Class Members Equitably

The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Class Members equitably because all Settlement Class Members are eligible for reimbursement following submission of a claim form and/or for important credit monitoring services for two years from the Effective Date. Lietz Decl., ¶ 29.

### 2. The Settlement Satisfies Historic Preliminary Approval Factors

The historical procedure for review of a proposed class action settlement is a well-established two-step process. ALBA & CONTE, 4 NEWBERG ON CLASS ACTIONS, §11.25, at 38–39 (4th ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval."[17] "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.,* No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. Jun. 15, 2010). Settlement negotiations involving arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.[18]

Here, there is no question that the proposed Settlement is "within the range of possible approval." As explained above, the process used to reach the Settlement was

---

[17] *Id.* (quoting MANUAL FOR COMPLEX LITIG., §30.41 (3rd ed. 1995)); *Fresco v. Auto Data Direct, Inc.,* No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007).

[18] *See* MANUAL FOR COMPLEX LITIG. at §30.42. ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

fair. The Settlement is the result of intensive, arm's length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues in this case. Further, the relief provided is significant, especially considering the risks and delay further litigation would entail. Thus, the Settlement is due to be preliminarily approved.

### D. The Proposed Class Notice Satisfies Rule 23.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPL. LITIG. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted).

The notice program here satisfies all of these criteria and is designed to provide the best notice practicable. Foremost, the notice is reasonably calculated to apprise the Settlement Class of the pendency of the case; class certification (for settlement purposes); the terms of the Settlement; Settlement Class Counsel's request for fees,

costs, and expenses; Settlement Class Members' rights to opt-out of or object to the Settlement; as well as the other information required by Fed. R. Civ. P. 23(c)(2)(B). Additionally, the notice program is comprised of: (1) direct notice sent by email to Settlement Class Members whose personal e-mail addresses are available within Acuity's records; (2) direct notice sent by U.S. mail for Settlement Class Members whose personal e-mail addresses are not available within Acuity's records; and (3) Notice posted to the Settlement Website. S.A. § 8. This approach will satisfy due process. *See* Fenwick Decl.

The form of the Preliminary Approval Order, Exhibit D to the Settlement Agreement, has been drafted and approved by counsel for Plaintiff and counsel for Acuity. The proposed claim form, Exhibit A to the Settlement, likewise satisfies all of the above criteria. Finally, Defendant will provide the notification required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, to the Attorneys General of each U.S. State in which Settlement Class Members reside, the Attorney General of the United States, and any other required government officials. S.A. § 8(a).

Therefore, the Notices and notice program satisfy all applicable requirements of the law, including Rule 23 and Due Process. The Court should therefore approve the Notices, notice program, and the form and content of the claim form and Notices.

**E. The Court Should Schedule a Final Approval Hearing.**

The last step in the preliminary approval process is to schedule a Final Approval Hearing, at which the Court will hear evidence and argument necessary to make its final evaluation of the Settlement; whether to enter a Final Approval Order under

Rule 23(e); and whether to approve Settlement Class Counsel's request for fees, costs, and expenses. Plaintiff requests that the Court schedule the Final Approval Hearing at a date convenient for the Court, at least 90 days after Acuity notifies the appropriate government officials pursuant to CAFA. Class Counsel will file the motion for Final Approval no later than 14 days prior to the hearing.

## IV.    CONCLUSION

For the reasons stated, Plaintiff respectfully requests that the Court enter an order: (1) preliminarily approving the proposed settlement; (2) preliminarily certifying the Settlement Class; (3) appointing Shannon Arbuthnot as Settlement Class Representative; (4) appointing David K. Lietz, John A. Yanchunis, and Patrick A. Barthle as Settlement Class Counsel; (5) approving the proposed Notice program and authorizing its dissemination; (6) appointing Kroll as the Claims Administrator; (7) approving the procedures for exclusions and objection; and (8) setting a schedule for the final approval process. A proposed Preliminary Approval Order is attached to the Settlement Agreement as its Exhibit D.

Dated: April 4, 2023                          Respectfully submitted,

*/s/ John A. Yanchunis*
John A. Yanchunis, FBN 324681
Florida Bar No. 324681
jyanchunis@ForThePeople.com
Patrick A. Barthle II
Florida Bar No. 99286
pbarthle@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602

Telephone: (813) 223-5505
Facsimile: (813) 223-5402

David K. Lietz (*pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

*Attorneys for Plaintiff and the Proposed
Class*

## Local Rule 3.01(g) Certification

In accord with Local Rule 3.01(g), Plaintiff conferred with Defendant regarding the relief requested in this motion and Defendant does not object to the relief sought herein but only in connection with the proposed settlement of this case.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 4, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ John A. Yanchunis*