UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| SHANNON ARBUTHNOT, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff,*<br>  v.<br><br>ACUITY – CHS, LLC f/k/a COMPREHENSIVE HEALTH SERVICES LLC,<br><br>    *Defendant.* | Case No. 6:22-cv-658-PGB-DCI |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

On April 4, 2023, Plaintiff Shannon Arbuthnot ("Plaintiff" or "Settlement Class Representative"), moved for preliminary approval of the proposed class action Settlement and for certification of the Settlement Class (the "Preliminary Approval Motion") (Doc. 43).[1] The Court preliminarily approved the Settlement on April 6, 2023, finding that the terms of the Settlement were "fair, reasonable, and adequate" and the Class should be given notice. (Doc. 44 at 2)[2] (the "Preliminary Approval Order").

Plaintiff now moves for final approval of the Settlement and for certification of

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release, which was filed with the Preliminary Approval Motion, (Doc. 43-1), and is referred to herein as the Settlement or "S.A."

[2] Pinpoint citations to material on the Court's docket refer to the CM/ECF System's pagination in the upper right hand corner of the document.

the Settlement Class, and requests that the Court:

1) Approve the Settlement as fair, reasonable, and adequate under Rule 23(e);
2) Certify the Settlement Class under Rule 23(b);
3) Appoint Plaintiff as Class Representative for the Settlement Class;
4) Appoint as Class Counsel John A. Yanchunis of Morgan & Morgan Complex Litigation Group, and David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC;
5) Find the Notice Program as implemented satisfies Rule 23 and due process;
6) Appoint Kroll Settlement Administration LLC ("Kroll") as the Settlement Administrator;
7) Grant Class Counsel's Motion for Fee Award and Litigation Costs (Doc. 45);
8) Exclude the five (5) opt-outs from the Settlement; and
9) Grant any further relief as the Court deems just and proper.

As set forth in the declaration of Scott M. Fenwick of Kroll, Kroll implemented an extensive Court-approved Notice Program with direct notice via first class mail, a toll-free telephone number, and the Settlement Website, all of which were designed to reach the Class and satisfy Rule 23(c)(2). The Notice Program is believed to have reached some 98% of the Class through direct mail notice. As further set forth in Mr. Fenwick's declaration, the response from the class has been positive: as of July 28, 2023, a total of 1,532 claims have been received with only five requested exclusions and no objections. Declaration of Scott M. Fenwick ¶¶ 5–16, attached as **Exhibit 1** ("Fenwick Decl.").

## I. INTRODUCTION

On or about on April 4, 2022, Plaintiff filed this putative class action alleging that Defendant, Acuity – CHS, LLC ("Acuity" or "Defendant") (all parties collectively referred to as the "Parties"), failed to adequately safeguard its patients' electronically stored personally identifiable information ("PII") in connection with a

cybersecurity incident announced by Acuity on or about February 15, 2022 ("Data Breach"). (Doc. 1). Therein Plaintiff alleged causes of action against Acuity for: (i) negligence; (ii) unjust enrichment, and (iii) negligence *per se*.  On May 27, 2022, Acuity filed a Motion to Dismiss Plaintiff's Complaint as a whole for failure to state a claim under Rules 12(b)(1) and 12(b)(6). (Doc. 21). Acuity's Motion to Dismiss was fully briefed as of July 18, 2022. (Doc's 26, 32).

While Acuity's Motion was still pending and with the benefit of formal discovery, the Parties agreed to engage in voluntary settlement negotiations. S.A. at 1. After multiple weeks of arms'-length negotiation between competent and experienced counsel for the Parties, on February 2, 2023, the Parties agreed to the terms of a settlement, and filed a Notice of Settlement. (Doc. 41). Considering the Notice, this Court entered an order administratively closing the case, subject to reopening within 60-days. (Doc. 42).

As discussed in detail in Plaintiff's Preliminary Approval Motion (Doc. 43), the Settlement is fair, reasonable, and adequate, and represents an excellent result for the Settlement Class. The relief provided by the Settlement was designed to meet the types of repercussions that consumers would sustain from a Data Breach. Specifically, the Settlement provides for the payment of claims made by Settlement Class Members for (a) documented out of pocket expenses incurred as a result of the Data Security Incident, of up to $500.00 per person; (b) compensation for up to 3 hours of lost time, at $20/hour, for time spent dealing with the Data Breach; (c) up to $3,500.00 per person in compensation for Extraordinary Losses; as well as (d) two (2) years of credit

monitoring for each Settlement Class Member. S.A. § 3. The Settlement also helps protect the PII of Plaintiff and Settlement Class Members going forward via the security-related improvements Acuity has implemented related to its cybersecurity since the Data Security Incident. S.A. § 4.

## II. BACKGROUND

### A. Information About the Settlement

While Acuity's Motion to Dismiss was pending, and with the benefit of formal discovery—including the deposition of Acuity's corporate representative—the Parties agreed to engage in voluntary settlement negotiations. Specifically, proposed Class Counsel Lietz reached out to defense counsel to gauge Defendant's interest in a possible resolution. *See* Declaration of David Lietz, previously filed at (Doc. 43-2) ("Lietz Decl."), ¶ 17. After getting a positive response, Mr. Lietz prepared and forwarded a formal demand to defense counsel that included a draft term sheet that laid out the outlines of a potential settlement. *Id.* The terms sheet included multiple "buckets" of relief, each of which needed to be negotiated separately. There was considerable back and forth on each and all of these "buckets" of relief, with both Parties being guided by their knowledge of data breach cases generally, and settlements achieved in other data breach cases specifically. *Id.*

After extensive arm's length settlement negotiations, the parties reached an agreement on the essential terms of settlement. *Id.* ¶ 18. The subject of attorneys' fees, costs, and expenses, subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties. *Id.* ¶ 21.

Based on Plaintiff's counsel's independent investigation of the relevant facts and applicable law, experience with many other data breach cases, including data breach cases in this District and before this Court, and the information provided by Defendant, Plaintiff's counsel submits that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. *Id.* ¶ 23. Consequently, the parties worked together to prepare a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto.

### B. The Terms of the Settlement Agreement

#### 1. The Settlement Class

The proposed Settlement Class is defined as the:

> All persons to whom Defendant sent Notice of the Data Security Incident that gives rise to this suit (the "Data Security Incident").
>
> Specifically excluded from the Settlement Class are: (i) Acuity's officers and directors; (ii) any entity in which Acuity has a controlling interest; and (iii) the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Acuity (not including employees). Also excluded from the Settlement Class are members of the judiciary to whom this case is assigned, their families and members of their staff. The Settlement Class is estimated to include approximately 106,910 individuals.

S.A. § 1.

#### 2. The Settlement Benefits

Under the Settlement, Settlement Class Members are eligible to receive the following benefits:

- Reimbursement of Ordinary Losses of up to $500.00;

- Reimbursement of Extraordinary Losses of up to $3,500.00;

- Reimbursement of Attested Time up to 3 hours of lost time, at $20/hour;

- Two (2) years of Credit Monitoring services;

- Improved Security Measures implemented by Acuity to ensure the protection of the PII of Plaintiff and Settlement Class Members.

S.A. §§ 3, 4.

Without reducing the amount available to the Settlement Class, Acuity will also separately pay for the cost of settlement administration and notice, including the payment of the Claims Administrator and the Claims Referee, if needed. S.A. § 8(c). Likewise, without reducing the amount available to the Settlement Class, Acuity will pay the amount approved by the Court for attorneys' fees, costs, and expenses, that does not exceed $255,000.00. S.A. § 7.

### 3. The Notice Program

The Parties proposed, and the Court preliminarily appointed, Kroll Settlement Administration LLC ("Kroll") to be appointed as the Claims Administrator. Kroll is a nationally recognized class action notice and administration firm that designed and executed a class notice program for this case.

Specifically, on April 17, 2023, Kroll designated a post office box with the mailing address *Arbuthnot v. Acuity* c/o Kroll Settlement Administration LLC, PO Box 225391, New York, NY 10150-5391 in order to receive requests for exclusion, claim forms, and correspondence from Settlement Class Members. Fenwick Decl. ¶ 5. On April 18, 2023, Kroll created a dedicated website entitled www.acuitysettlement.com (the "Settlement Website"). The Settlement Website "went live" on May 5, 2023, and

contains, among other things, the Settlement Agreement, Preliminary Approval Order, Long Form Notice, Exclusion Form, claim form, important dates and deadlines, answers to frequently asked questions, and allows Settlement Class Members an opportunity to file a claim form online. Fenwick Decl. ¶ 6.

On April 18, 2023, Kroll established a toll-free number, 1-833-747-6933, for Settlement Class Members to call and obtain additional information regarding the settlement through an Interactive Voice Response ("IVR") system.  As of July 28, 2023, the IVR system has received 511 calls. Fenwick Decl. ¶ 7.

On April 20, 2023, Kroll received one (1) data file from the Defendant, containing 110,611 records consisting of first and last names, and physical mailing addresses for Settlement Class Members.  Kroll undertook several steps to reconcile the records and compile the eventual Class List for the mailing of Short Form Notices. After cleaning and de-duplicating the data file, Kroll determined that there were 888 duplicate records and 109,723 unique records. Fenwick Decl. ¶ 8. On May 5, 2023, Kroll caused 109,723 Short Form Notices to be mailed via first-class mail. Fenwick Decl. ¶ 9.

Sixty-two (62) Short Form Notices were returned with a forwarding address and were promptly re-mailed. Fenwick Decl. ¶ 10. As of July 28, 2023, 10,829 Short Form Notices were returned by the USPS as undeliverable as addressed, without a forwarding address. Kroll ran the 10,829 undeliverable records through an advanced address search. The advanced address search produced 9,397 updated addresses. Kroll has re-mailed Short Form Notices to the 9,397 updated addresses obtained from the

advance address search. Of the 9,397 re-mailed Notices, 700 have been returned as undeliverable a second time. Kroll will continue to skip-trace and re-mail Short Form Notices as they are returned. Fenwick Decl. ¶ 11.

Based on the foregoing, following all Short Form Notice re-mailings, Kroll has reason to believe that Short Form Notices likely reached 107,591 of the 109,723 persons to whom notice was mailed, which equates to a reach rate of the direct mail notice of approximately 98.06%. This reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches[3] over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign. Fenwick Decl. ¶ 12.

All costs of settlement administration and notice are to be separately paid for by Acuity. S.A. § 8(c). Plaintiff is informed that such costs are expected to be approximately $115,000.00. (Doc. 43-2 at 21, Yanchunis Decl. ¶ 20).

### 4. Exclusions and Objections

The deadline to request exclusion from, or object to, the settlement was July 5, 2023. (Doc. 44 at 10); Fenwick Decl. ¶ 15. Following the passage of that deadline, five requests for exclusion and zero objections were received. Fenwick Decl. ¶ 16.

### 5. Attorneys' Fees, Costs, and Expenses

---

[3] Fed. Jud. Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010), *available at* https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf. The guide suggests that the minimum threshold for adequate notice is 70%.

In the Settlement Plaintiff agreed not to seek attorneys' fees, costs, and expenses ("Class Counsel Payment") greater than $255,000.00, and Acuity will pay the amount approved by the Court that does not exceed $255,000.00. S.A. § 7. On June 21, 2023, Plaintiff filed her Unopposed Motion for Fee Award and Litigation Costs, seeking $247,087.83 in attorneys' fees and $7,912.17 in costs and expenses, representing a request of only 3.9% of the amounts made available by the Settlement solely for lost time; and less than 0.5% of the amounts made available for Ordinary Losses. (Doc. 45).

### 6. Release of Claims

Under the Settlement, each Settlement Class Member will release:

> any and all claims or causes of action, whether known or unknown, that concern, refer or relate to (a) the Data Security Incident; and (b) all other claims or causes of action that were pleaded, or that could have been pleaded based on the Data Security Incident and/or Acuity's response to the Data Security Incident in the Lawsuit.

S.A. § 10.

## III.   ARGUMENT

### A. Certification of the Settlement Class is Appropriate

This Court provisionally certified the Settlement Class in its Preliminary Approval Order, finding that the Settlement Class meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), and the predominance requirement of Rule 23(b). (Doc. 44); *See* Fed. R. Civ. P. 23(a)(1)–(4), (b)(3); MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Since the Court's provisional

certification and commencing the Notice Program there have been no developments that would alter this conclusion. Based on the facts and arguments stated herein and for the reasons set forth in Plaintiff's Preliminary Approval Motion (Doc. 43), Plaintiff respectfully submits that the Settlement Class should be finally certified.

### 1.  The Proposed Settlement Class Meets the Requirements of Rule 23(a).

#### a.  Numerosity.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Fed. R. Civ. P. 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Courts require only that plaintiffs provide "some evidence of the number of members in the purported class, or at least a reasonable estimate of that number." *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 669 (S.D. Fla. 1997).

Here, Defendant identified approximately 106,910 people in the Settlement Class. S.A. § 1. And the data file provided by Defendant to Kroll, after cleaning and de-duplication, revealed 109,723 unique records to whom notice was sent. Fenwick Decl. ¶ 8. Thus, numerosity is easily satisfied.

#### b.  Commonality.

The second prerequisite to certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and

the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). The commonality requirement presents a low hurdle, as it does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013). "[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 131 S. Ct. at 2556. Rule 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members."[4] Here, commonality is readily satisfied.

The Settlement Class Members are joined by the common questions of law and fact that arise from the same event: the Data Security Incident. *See Manno*, 289 F.R.D. at 685. Specifically, Plaintiff alleges, among others, the following common questions:

a. Whether Acuity unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' PII;

b. Whether Acuity failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. Whether Acuity data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d. Whether Acuity data security systems prior to and during the Data Breach were consistent with industry standards;

e. Whether Acuity owed a duty to Plaintiff and Class Members to safeguard

---

[4] *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (cleaned up) (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009)); *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 642 (M.D. Fla. 2011) (citing *Williams*, 568 F.3d at 1355).

their PII;

    f.   Whether computer hackers obtained Plaintiff's and Class Members' PII in the Data Breach;

    g.   Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Acuity's misconduct;

    h.   Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

(Doc. 1 ¶ 44). Such issues, focusing on Defendant's conduct, satisfy commonality.[5]

### c. **Typicality.**

The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); Fed. R. Civ. P. 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory."[6] Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, typicality is satisfied for the same reasons as commonality. Specifically, Plaintiff's claims are typical of those of other Settlement Class Members because they

---

[5] *See, e.g.*, *In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the Data Security Incident"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching classwide resolution.").

[6] *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.").

arise from the Data Security Incident. They are also based on the same legal theory, i.e., that Acuity had a legal duty to protect Plaintiff's and Class Members' PII. Because there is a "sufficient nexus" between Plaintiff's and Settlement Class Members' claims, typicality is met. *Hines*, 334 F.3d at 1256.

### d. Adequacy.

Rule 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 NEWBERG ON CLASS ACTIONS § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. There is nothing suggesting this requirement is not satisfied. Plaintiff is a member of the Settlement Class and does not possess any interests antagonistic to the Settlement Class. She provided her PII to Acuity and alleges it was compromised by the Data Security Incident, as the PII of the Settlement Class was also allegedly compromised. Plaintiff's claims are identical to the claims of the Settlement Class, and with no objections and only five requested exclusions, Plaintiff and the Settlement Class desire the same outcome in this litigation.

In addition, proposed Settlement Class Counsel are experienced in class action litigation and have submitted their skills and experience in handling class litigation around the country and in this District. (Doc. 43-2). Because Plaintiff and her counsel have devoted substantive time and resources to this litigation, the adequacy requirement is satisfied.

### 2. The Predominance and Superiority Requirements of Are Met.

In addition to meeting Rule 23(a), the proposed Settlement Class must also meet one of the three requirements of Rule 23(b). *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 660 (S.D. Fla. 2011). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that: (1) questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700. The Settlement Class readily meets these requirements.

### a. Predominance.

The predominance requirement focuses on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate "if they have a direct impact on every class member's effort to establish

liability and on every class member's entitlement to injunctive and monetary relief."[7] Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all Settlement Class Members of the class in a single adjudication." *In re Checking*, 275 F.R.D. at 660. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"[8]

Common issues readily predominate here because the central liability question in this case—whether Acuity failed to safeguard Plaintiff's PII, like that of every other Class member—can be established through generalized evidence.[9] Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether Acuity had a duty to exercise reasonable care in safeguarding, securing, and protecting their PII and whether Acuity breached that duty. The many common questions that arise from Acuity's conduct predominate over individualized issues. Other courts have recognized that common issues arising from a data breach

---

[7] *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (citing *Klay*, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . .").

[8] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, 123–124 (3d ed. 2005)).

[9] *See Klay*, 382 F.3d at 1264 ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.").

predominate.[10] Because the claims are being certified for settlement purposes, there are no manageability issues.[11]

### b. Superiority.

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'"[12] Factors the Court may consider are: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class.

Here, resolution of numerous claims in one action is far superior to individual

---

[10] *See, e.g., Countrywide*, 2009 WL 5184352, at *6–7 (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' information); *Heartland*, 851 F. Supp. 2d at 1059 (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the Data Security Incident, and the resulting injury to each class member from that conduct").

[11] *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

[12] *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Indeed, absent class treatment, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that Settlement Class Members have an interest or incentive to pursue their claims individually, given there are only five requested exclusions and no objectors, Fenwick Decl. ¶ 16, as well as the amount of damages likely to be recovered, relative to the resources and expense required to prosecute such an action.[13] Additionally, the Settlement will give the parties the benefit of finality.

## B. Plaintiff's Counsel Should Be Appointed as Settlement Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As this Court found at the preliminary approval stage, (Doc. 44 at 2–3), and as

---

[13] *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 700 (S.D. Fla. 2004) (class actions are "particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually").

set out in their previously filed declarations, (Doc. 43-2), Messrs. Lietz and Yanchunis have extensive experience prosecuting similar class actions, as well as other complex litigation, and have the experience to assess the risk of continued litigation and appeals. Settlement Class Counsel have diligently investigated and prosecuted the claims here, have dedicated substantive resources to the litigation of those claims, and have successfully negotiated the Settlement to the benefit of Plaintiff and the Settlement Class. Accordingly, the Court should appoint David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC, and John A. Yanchunis of Morgan & Morgan as Settlement Class Counsel.

**C. The Settlement Is Fair, Reasonable, and Adequate.**

The procedure for review of a proposed class action settlement is a well-established, two-step-process. 4 NEWBERG ON CLASS ACTIONS, § 11.25, at 38–39 (4th ed. 2002). In the first step, the Court determines, as it did here, whether the proposed settlement should be preliminarily approved. *See* David F. Herr, *Annotated Manual for Complex Litigation* § 21.632 (4th ed. 2004). In the second step, after hearing from any objectors and being presented with declarations and materials to support the fairness of the settlement, the Court makes a final decision whether the settlement should be finally approved. *See id.* §§ 21.633-35. In deciding whether to approve the Settlement, under Rule 23(e), the Court should approve a class action settlement if it is fair, reasonable, and adequate,[14] and "not the product of collusion." *Leverso v. Lieberman*,

---

[14] *See Taylor v. Citizens Telecom Servs. Co., LLC*, 584 F. Supp. 3d 1101, 1103–04 (M.D. Fla. 2022) (finding the "Settlement Agreement, including all Exhibits thereto, [were] entered into in good faith and [thus

18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Wilson v. Everbank*, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (quoting *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x 429, 434 (11th Cir. 2012)).

## 1. The Settlement Satisfies Amended Rule 23(e)

Under Rule 23(e)(1)(B)(i), final approval is proper under the amended rule upon a finding that the settlement is "fair, reasonable, and adequate" after considering:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). The Advisory Committee noted, however, that "[t]he goal of this amendment is not to displace any factor" previously considered in any given Circuit. *See* 4 NEWBERG ON CLASS ACTIONS, § 13:58 ("[V]arious pre-existing legal factors are not captured by amended Rule 23(e)(2)'s list of factors may prove relevant in particular cases"). The revised rule reflects factors already used in the Eleventh

---

were] fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members").

Circuit in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e):

1) the existence of fraud or collusion behind the settlement;
2) the complexity, expense, and likely duration of the litigation;
3) the stage of the proceedings and the amount of discovery completed;
4) the probability of the Class Representative's success on the merits;
5) the range of possible recovery; and
6) the opinions of the class counsel, class representative, and the substance and amount of opposition to the settlement

*Montoya v. PNC Bank, N.A.*, 2016 WL 1529902 at *8 (S.D. Fla. April 13, 2016), (citing *Leverso*, 18 F.3d at 1530 n.6; *Bennett*, 737 F.2d at 986). The analysis of these factors shows this Settlement to be eminently fair, adequate, and reasonable.

### a. Adequacy of Representation and Arm's Length Negotiation

As explained above, Plaintiff and Class Counsel have adequately represented the Class. *See supra* § III.A.1.d. Moreover, the Settlement was negotiated at arm's length. (Doc. 43-2, Lietz Decl., ¶ 17–18).[15] Subsections (A) and (B) are therefore met.

### b. Adequacy of Relief

The relief offered by the Settlement is adequate considering the risks of continued litigation. Although Plaintiff is confident in the merits of her claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Plaintiff's claims would still need to succeed against the pending motion to dismiss (Doc. 21), and on a motion for class certification, and likely survive an appeal thereof.

---

[15] *See also Lipuma*, 406 F. Supp. 2d at 318-19 (approving settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

The Settlement provides payment for the types of claims made by consumers following a Data Breach. Specifically, Settlement Class Members can make claims for (a) documented out of pocket expenses incurred of up to $500.00 per person; (b) compensation for up to 3 hours of lost time, at $20/hour, for time spent dealing with the Data Breach; (c) up to $3,500.00 per person in compensation for Extraordinary Losses; as well as (d) two (2) years of credit monitoring for each Settlement Class Member. S.A. § 3. The Settlement also helps protect the PII of Plaintiff and Settlement Class Members going forward via the security-related improvements Acuity has implemented related to its cybersecurity since the Data Security Incident. S.A. § 4. Given the relief available, Class Counsel believe the results achieved are well within the range of possible approval.

Here, in Defendant's previously filed motion to dismiss, Defendant raised several attacks on the substantive claims Plaintiff alleged. *See* (Doc. 21). Plaintiff vigorously opposed Defendant's motion. *See* (Doc. 26). Nevertheless, and despite the strength of her claims, Plaintiff is pragmatic in her awareness of the various defenses available to Acuity, as well as the risks inherent to continued litigation. Acuity consistently denied the allegations and made clear that it would vigorously defend this case through trial as needed.

Settlement relief will be distributed via a straight-forward claims process utilizing an easy-to-understand claim form. S.A. §§ 4, 6. Payments for approved claims will be distributed as soon as practicable after allocation and distribution are determined by the Claims Administrator following the Effective Date. S.A. § 6.

Attorneys' fees, costs, and expenses were negotiated separate, apart, and after reaching agreement on the Class relief. Lietz Decl. ¶ 21. Plaintiff sought attorneys' fees, costs, and expenses for prosecuting this action not to exceed $255,000.00. S.A. § 8; (Doc. 45). Attorneys' fees, costs, and expenses, in whatever amount set by the Court, are to be paid within 10 business days of the Effective Date or the Court's Order approving this award, whichever is later. S.A. § 7.

Accordingly, the relief provided by the Settlement is fair, reasonable, and adequate especially when considering the inherent costs, risks, and delay were this matter to proceed.  Subsection (C) of Rule 23(e)(2) is therefore met.

### c.  The Settlement Treats Class Members Equitably

The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats Class Members equitably because all Settlement Class Members are eligible for reimbursement following submission of a claim form and/or for important credit monitoring services for two years from the Effective Date. Lietz Decl., ¶ 29.

### D. The Opinions of Class Counsel, Class Representatives, and Absent Settlement Class Members Favor Approval of the Settlement

The Court should also give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren* 693 F. Supp. at 1060; *see also In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 312–13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.

'[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted). As one district court stated:

> This Court, like others, considers the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important indicator as to its reasonableness and fairness. Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable.

*Howard Braynen, et al. v. Nationstar Mortgage, LLC, et al.*, 2015 WL 6872519 (S.D. Fla. 2015) (internal citations and quotation marks omitted).

Here, Class Counsel have substantial experience prosecuting large, complex consumer class actions. (Doc. 43-2 at 2–9, 17–18). Class Counsel are confident that the Settlement provides significant relief to the Class, and is in the best interests of the Class. (Doc. 43-2 at 20, Yanchunis Decl. ¶¶ 16–18). Class Counsel heartedly endorse the Settlement. Additionally, the reaction of the Settlement Class has been positive. As of July 28th, there are zero objections, five requested exclusions, and 1,532 claims have been received. Fenwick Decl. ¶¶ 13, 16. These are powerful indicia that the Settlement is fair, reasonable, and adequate and deserves final approval. *See Hall v. Bank of America, N.A.*, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an

objection," and there were few objections to the class settlement, "such facts are overwhelming support for the settlement")

## IV.    CONCLUSION

For the reasons stated, Plaintiff respectfully requests that the Court enter an order: (1) finally approving the proposed settlement; (2) certifying the Settlement Class; (3) appointing Shannon Arbuthnot as Settlement Class Representative; (4) appointing David K. Lietz and John A. Yanchunis as Settlement Class Counsel; (5) finding the Notice Program as implemented satisfies Rule 23 and Due Process; (6) finally appointing Kroll as the Claims Administrator; (7) granting Class Counsel attorneys' fees of $247,087.83 and $7,912.17 in costs and expenses, (8) excluding the five requested exclusions listed in the Declaration of Scott Fenwick, and (9) dismissing the action with prejudice. A proposed Final Approval Order is attached to the Settlement Agreement as its Exhibit E, (Doc. 43-1 at 49–60).

Dated: July 28, 2023                        Respectfully submitted,

                                            /s/ John A. Yanchunis
                                            John A. Yanchunis, FBN 324681
                                            Florida Bar No. 324681
                                            jyanchunis@ForThePeople.com
                                            Patrick A. Barthle II
                                            Florida Bar No. 99286
                                            pbarthle@ForThePeople.com
                                            MORGAN & MORGAN
                                            COMPLEX LITIGATION GROUP
                                            201 N. Franklin Street, 7th Floor
                                            Tampa, Florida 33602
                                            Telephone: (813) 223-5505
                                            Facsimile: (813) 223-5402

David K. Lietz (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

*Attorneys for Plaintiff and the Proposed*
*Class*

## Local Rule 3.01(g) Certification

In accordance with Local Rule 3.01(g), Plaintiff conferred with Defendant regarding the relief requested in this motion and Defendant does not object to the relief sought herein, for purposes of the proposed settlement of this case only.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 28, 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *John A. Yanchunis*